Brad **HIRSHEY**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 01A02–0511–CR–1038.

Court of Appeals of Indiana.

Aug. 23, 2006.

Transfer Denied Oct. 26, 2006.

Donald C. Swanson, Jr., Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Brad Hirshey challenges the trial court's ruling denying his motion to suppress and his convictions for dealing in methamphetamine, a class A felony; possession of a sawed-off shotgun, a class D felony; eight counts of possession of a switchblade knife, all class B misdemeanors; possession of marijuana, a class A misdemeanor; and possession of paraphernalia, a class A misdemeanor. We affirm in part, reverse in part, and remand.

### Issues

We restate the issues as follows:

I.  Whether the search warrant for Hirshey's trailer was supported by probable cause;

II. Whether the officers relied on the warrant in good faith;

III. Whether Hirshey validly consented to the search of the garage;

IV. Whether the search of the garage exceeded the scope of Hirshey's consent;

V.  Whether evidence should be suppressed based on the fact that Hirshey did not receive *Miranda* warnings; and

VI. Whether the evidence was sufficient to prove that Hirshey possessed methamphetamine with intent to deal.

### Facts and Procedural History

Holly Godsey was arrested for dealing methamphetamine. Indiana State Police Detective Dan Mawhorr interviewed Godsey and asked her "if she wanted to try to do something to help herself with the charge." Tr. at 48. Godsey indicated that she purchased drugs from Hirshey on a regular basis and agreed to try to make a controlled purchase from him. However, Godsey was unable to contact Hirshey. Detective Mawhorr then sought a search warrant for Hirshey's trailer based on Godsey's statements. Detective Mawhorr had no previous connection with Godsey, and the probable cause affidavit provided the court with no information concerning her credibility. He also did not corroborate any portion of her statement.

A warrant was issued to search Hirshey's trailer for methamphetamine. Detective Mawhorr and several other officers took the warrant to Hirshey's trailer, and Hirshey let them in after viewing the warrant. Hirshey was kept outside throughout the search. Eight switchblade knives were found in a dresser drawer. A search of the bathroom wastebasket revealed charred aluminum foil and seven plastic bags with the corners cut off. In the closet, police found a bong and a butane torch. A plastic bag of marijuana was found inside a fanny pack. In a nightstand, the police found a propane torch, two glass smoking pipes, an aluminum teaspoon, a digital pocket balance, and some cut corners of plastic bags.

After finding these items, Detective Mawhorr placed Hirshey under arrest. He did not advise Hirshey of his *Miranda* rights. He asked Hirshey for consent to

search a detached garage located about 300 yards from the trailer. Hirshey initially was unwilling to allow the search to proceed without a warrant. After Detective Mawhorr told him that he could apply for a warrant, and his parents urged him to consent, Hirshey signed a consent form.

Officer Lori Petro, who was participating in the search, asked Hirshey if there were any weapons inside the garage. Hirshey told her that she might find guns in the cabinet. Inside the garage, police found a nine-millimeter semi-automatic pistol and a sawed-off shotgun in a cabinet. A brown leather pouch was found inside a wood-burning stove. The pouch contained eleven plastic bags of various quantities of methamphetamine. The combined weight of the methamphetamine was 9.56 grams.

Hirshey was charged with dealing in methamphetamine, a class A felony; possession of a sawed-off shotgun, a class D felony; eight counts of possession of a switchblade knife, all class B misdemeanors; possession of marijuana, a class A misdemeanor; possession of paraphernalia, a class A misdemeanor; and maintaining a common nuisance, a class D felony. On October 1, 2004, Hirshey filed a motion to suppress the evidence seized during the search of the trailer and garage. On November 1, 2004, a hearing was held on Hirshey's motion. On November 24, 2004, the court entered an order granting Hirshey's motion only as to his statement about the location of the guns. On November 29, 2004, the trial court certified the order for interlocutory appeal. On February 2, 2005, this Court declined to accept jurisdiction.

The maintaining a common nuisance charge was dismissed, and a jury trial was held in June 2005 on the remaining charges. The trial court issued a standing order indicating that there would be a continuing objection to all evidence obtained pursuant to the search warrant and

the consent search. The jury found Hirshey guilty on all counts.

**Discussion and Decision**

*I. Validity of the Warrant*

■ The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require that warrants only be issued "upon probable cause, supported by oath or affirmation." Evidence that is seized in violation of these provisions must be suppressed. *Mapp v. Ohio,* 367 U.S. 643, 656, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Riddle v. State,* 257 Ind. 501, 275 N.E.2d 788, 790 (1971). Hirshey asserts that the warrant lacked probable cause and that the trial court erred in denying his motion to suppress the evidence obtained from the resulting search of his trailer.

■ Hirshey originally challenged the admission of the evidence through a motion to suppress. However, he is appealing from a completed trial and challenges the admission of the evidence at trial. Therefore, the issue is "appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Collins v. State,* 822 N.E.2d 214, 218 (Ind.Ct.App.2005), *trans. denied.* Our standard of review on the admissibility of evidence "is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection." *Id.* "We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. However, we must also consider the uncontested evidence favorable to the defendant." *Id.* We affirm the trial court's ruling if it is supported by substantial evidence of probative value. *Creekmore v. State,* 800 N.E.2d 230, 233 (Ind.Ct.App.2003).

■ Indiana Code Section 35–33–5–2(b) lays out special requirements for probable cause affidavits that are based on hearsay:

When based on hearsay, the affidavit must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes the totality of the circumstances corroborates the hearsay.

Officer Mawhorr's affidavit was based on hearsay statements by Godsey. However, he did not establish Godsey's credibility or corroborate her statements.

■ The State argues that probable cause exists because Godsey's statements were against her penal interest. Our supreme court has held that "declarations against penal interest can furnish sufficient basis for establishing the credibility of an informant within the meaning of Ind.Code § 35–33–5–2(b)(1)." *Houser v. State,* 678 N.E.2d 95, 100 (Ind.1997). In cases where we have found that the statements were against penal interest, the declarants have potentially exposed themselves to greater criminal liability. *Creekmore,* 800 N.E.2d 230; *Leicht v. State,* 798 N.E.2d 204 (Ind.Ct.App.2003), *trans. denied.* In *Creekmore* and *Leicht,* the declarants were found in possession of drugs and made statements implicating themselves in dealing. However, in this case, Godsey had already been arrested for dealing methamphetamine as a class A felony, and her statements did not tend to expose her to any greater criminal liability. On the contrary, Godsey offered information about Hirshey to receive leniency. In such cases, our court has held that the statements were not against penal interest. *Newby v. State,* 701 N.E.2d 593, 600 (Ind.Ct.App.1998) (statement was not against penal interest when declarant was told he would probably not be prosecuted if he revealed his source).[1] Godsey's statements were not against her penal interest, and because there is no other indication that her statements were reliable, the warrant lacked probable cause.

## II.  Good Faith

■ The State argues that even if the warrant lacked probable cause, the officers relied on it in good faith.

Generally a search conducted pursuant to an invalid warrant results in the suppression of any items seized. However, an exception has been carved out under both federal and Indiana law in which a search will be deemed valid if the State can show that the officer conducting the search relied in good faith upon a properly issued, but subsequently invalidated warrant. [*United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Ind.Code § 35–37–4–5]. The good faith exception will not apply under the following circumstances: (1) the warrant is based on false information knowingly or recklessly supplied; (2) the warrant is facially deficient; (3) the issuing magistrate is not detached and neutral; or (4) the affidavit or sworn testimony upon which probable

---

1. Recently in *State v. Spillers,* 847 N.E.2d 949 (Ind.2006), our supreme court ruled that a particular hearsay statement was not against penal interest. The declarant had been caught "red-handed" with drugs and named his supplier. The Court ruled that the statement "was less a statement against his penal interest than an obvious attempt to curry favor with the police." *Id.* at 956. The Court noted that a person arrested in incriminating circumstances has a strong incentive to shift the blame. *Id.* Although providing false information might have subjected the declarant to further prosecution for false informing as a class A or B misdemeanor, such an offense is negligible in comparison to the felony charges he was already faced with. *Id.* at 957 n. 8.

cause rests is so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable. [*Leon,* 468 U.S. at 923, 104 S.Ct. 3405; *Doss v. State,* 649 N.E.2d 1045, 1047 (Ind.Ct.App.1995) ]. *Lloyd v. State,* 677 N.E.2d 71, 74–75 (Ind. Ct.App.1997) (footnote omitted), *trans. denied.* Because it is clear that hearsay statements, without any indicia of reliability, cannot establish probable cause, we believe that this situation falls squarely within (4). It was unreasonable for the officers to rely on the warrant when it was plain that probable cause had not been established. Therefore, the trial court erred in denying Hirshey's motion to suppress the evidence found in his trailer.[2]

■ The evidence seized from Hirshey's trailer established his convictions for eight counts of possession of a switchblade knife, possession of marijuana, and possession of paraphernalia. Accordingly, those convictions are reversed. However, Hirshey may be retried. "Retrial following reversal for improperly admitted evidence does not violate the Double Jeopardy Clause so long as all the evidence, even that erroneously admitted, is sufficient to support the jury verdict." *Jaramillo v. State,* 823 N.E.2d 1187, 1190 n. 5 (Ind. 2005), *cert. denied.* Therefore, we remand for a new trial on these charges.

### III. Validity of Hirshey's Consent to Search Garage

■ Hirshey asserts that his consent to search the garage was not voluntarily given. When the State relies upon consent to justify the lawfulness of a search, it has the burden of proving that consent was voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct.

1788, 20 L.Ed.2d 797 (1968); *Snyder v. State,* 538 N.E.2d 961, 964 (Ind.Ct.App. 1989). Voluntariness of consent is a question of fact determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Barker,* 734 N.E.2d 671, 673 (Ind.Ct.App.2000). "The trial court is afforded the discretion to determine voluntariness; on review, we will not reweigh the evidence, and if it is conflicting, we will consider only that evidence which supports the trial court's ruling." *Barker,* 734 N.E.2d at 673.

■ Hirshey relies on *Barker,* in which we held that consent was vitiated when officers told the defendant that they would be able to get a warrant if she refused to give consent.[3] However, Detective Mawhorr testified at the suppression hearing that he had told Hirshey that he would *apply* for a warrant if he did not consent to the search. Tr. at 65–66. Detective Mawhorr testified that he was aware that telling Hirshey he would be able to get a warrant would invalidate his consent. Officer Petro also testified that Detective Mawhorr simply said he would apply for a warrant. Tr. at 86. In *Daniel v. State,* 582 N.E.2d 364, 369 (Ind.1991), *cert. denied,* our supreme court ruled that it was not improper for an officer to inform a defendant that a warrant will be sought if consent is not given. In *Barker,* we also recognized that there is a difference between an officer telling a defendant that a warrant will be "obtained as opposed to merely sought." *Barker,* 734 N.E.2d at 674. The trial court had discretion to credit the officers' testimony that Hirshey was only told that a warrant would be sought. Therefore, we find that Hirshey's

---

2. Because we conclude that the warrant lacked probable cause, we need not address whether the warrant was facially invalid due to the error in the address.

3. Hirshey has not argued that his arrest affected the voluntariness of his consent, and we do not decide that issue.

consent to the search of the garage was voluntary.

### IV. Scope of the Consent Search

Hirshey asserts that even if the search of the garage was consensual, it exceeded the scope of his consent. He argues that the fact that he was kept outside during the search prevented him from placing any limitations on the search. The scope of a consent search is determined by what a reasonable person would have understood by the exchange between the officer and the suspect. *Krise v. State*, 746 N.E.2d 957, 963–64 (Ind.2001) (citing *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)). Hirshey had seen the search warrant for the trailer and knew the officers were looking for methamphetamine. At the time he gave his consent, Hirshey had already been arrested based on the marijuana, paraphernalia, and knives found in his trailer. These items were found as a result of a thorough search that involved looking under couch cushions, in wastebaskets, in drawers, and in a fanny pack. Hirshey expressed no desire to limit the search of the garage in any way. Under these circumstances, a reasonable person would not conclude that searching the cabinets and stove was beyond the scope of Hirshey's consent.

### V. Suppression under Miranda

Hirshey further argues that the evidence relating to the guns found in the garage must be suppressed because he told the officers where to find them. Hirshey was under arrest, and therefore in custody, when he told the officers that they might find guns in the cabinets. He had not been given *Miranda* warnings at any time during the course of the searches. Therefore, the trial court properly suppressed his statement. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, *Miranda*

only requires suppression of statements, not physical evidence. *United States v. Patane*, 542 U.S. 630, 636, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). Hirshey has cited no cases indicating that the Indiana Constitution requires a different result. In sum, we find no basis for reversing Hirshey's conviction for possession of a sawed-off shotgun.

### VI. Sufficiency of the Evidence

Finally, Hirshey argues that the evidence was insufficient to support a conviction of dealing in methamphetamine. In reviewing the sufficiency of the evidence, we neither reweigh evidence nor witness credibility. *Love v. State*, 741 N.E.2d 789, 792 (Ind.Ct.App.2001). We consider only the evidence and inferences most favorable to the verdict, and will only overturn a conviction if no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

Hirshey specifically argues that the State failed to prove the intent element of the offense. The information alleged that Hirshey knowingly or intentionally possessed a quantity of methamphetamine in excess of three grams with the intent to deliver it. *See* Ind.Code § 35–48–4–1 (defining dealing in cocaine or a narcotic drug). Intent is a mental state, and therefore triers of fact generally must draw inferences from the surrounding circumstances to determine whether the requisite intent exists. *Love*, 741 N.E.2d at 792. Possession of a large amount of drugs is circumstantial evidence of intent to deliver. *Id.*

The police found a total of 9.56 grams of methamphetamine in Hirshey's garage. Officer Petro testified that this is more than a person would generally have for personal use. The drugs were also separated into eleven packages in a manner consistent with the way drugs are typically

packaged for sale. These facts give rise to a reasonable inference that Hirshey intended to deliver the drugs. Therefore, the evidence was sufficient to convict Hirshey of dealing in methamphetamine.

In conclusion, we affirm Hirshey's convictions for dealing in methamphetamine and possession of a sawed-off shotgun. We reverse his convictions for eight counts of possession of a switchblade knife, possession of marijuana, and possession of paraphernalia and remand for a new trial.

Affirmed in part, reversed in part, and remanded.

KIRSCH, C.J., and, BAILEY, J., concur.