**Gregory S. BROWN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 47A04–0809–CR–564.

Court of Appeals of Indiana.

April 28, 2009.

Samuel S. Shapiro, Bloomington, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

## STATEMENT OF THE CASE

Gregory S. Brown brings this interlocutory appeal from the trial court's order denying his motion to suppress. Brown raises a single issue for our review, namely, whether the trial court erred when it denied his motion to suppress evidence obtained upon the execution of a search warrant. We hold that there was no probable cause for issuance of the warrant and that the search was not executed in objective good faith reliance on the warrant.

We reverse and remand.[1]

## FACTS AND PROCEDURAL HISTORY

On November 23, 2005, a person[2] called Orange County Chief Deputy Sheriff Richard Dixon[3] and informed him that someone in Lawrence County was growing marijuana plants in a garage next to a residence. Because the location was outside Deputy Dixon's jurisdiction, he referred the caller to Detective Michael Branham with the Lawrence County Sheriff's Department. When Deputy Dixon told Detective Branham about the caller's report, the detective asked how familiar Deputy Dixon was with the caller, but there was no mention of that conversation at the probable cause hearing. Later, in his deposition admitted at the suppression hearing, Deputy Dixon testified that he had known the caller as "[j]ust an acquaintance, possibly a casual friend[,]" for approximately fifteen years. Appellant's App. at 71. Deputy Dixon also stated that he "had never known this person to lie to [him] about anything." *Id.* at 73.

After speaking with Deputy Dixon, Detective Branham phoned the caller. Based on that one conversation, Detective Bran-

---

1. We heard oral argument in this case on March 25, 2009.

2. The caller's gender was not revealed to the trial court. For simplicity and in keeping with references below, we will refer to the caller as "he" or "him."

3. Although Dixon has since become Orange County Sheriff, we refer to him here as Deputy Dixon in keeping with the office he held at the time of the events in question.

ham requested a search warrant of the residence and garage at 979 Noe Road near Orleans but located in Lawrence County. At the probable cause hearing, Detective Branham testified, in relevant part, as follows:

Q [Deputy Prosecuting Attorney]: And we're seeking the Court's authority to search those premises [at 979 Noe Road] for cultivated marijuana and marijuana plants, receipts, ledgers, documents and other writings reflecting illegal trafficking of marijuana, and U.S. Currency. Is that correct?

A [Detective Branham]: Yes.

Q: Now back—you've received information this morning from this concerned citizen—first this is a concerned citizen that is not a confidential informant?

A: No.

Q: Not somebody being paid to give you information?

A: No.

Q: Not somebody working off charges?

A: No.

Q: Somebody who is basically upset by the fact that there is a marijuana grow of some significance, of some size, taking place in this county and wants to report it to the police, is that correct?

A: I think the main concern is that there is a child that lives at that residence and this concern is for the child.

Q: Alright. This person is aware that the people at the [sic] 979 Noe Road have a child?

A: Yes.

Q: And is concerned about this kind of activity going on in the presence of the child, is that correct?

A: Yes.

Q: Alright. Go ahead. The individual told you he was at the 979 Noe Road residence approximately how long ago and actually saw marijuana?

A: The person I talked to was there in recent weeks, ah, was unable to pin down exactly the date when they [sic] saw the marijuana grow. Apparently this person who resides at 979 Noe Road operates kind of a business on the side, out of the garage, and they [sic] were there for that purpose and this person kind of stumbled into a room built into the garage thinking it was a restroom.

Q: This person being your concerned citizen?

A: Right.

Q: Was there on legitimate business or to have an auto worked on and—

A: —right—

Q: —and saw, while on the call, an anteroom or some small room inside the garage and walked into it thinking it was a restroom?

A: That's right.

Q: And saw what?

A: They [sic] saw, as they [sic] described it, they [sic] hadn't ever seen anything like it before in real life, only on television, as far as actual plants, but—ah, approximately three (3) plants, and described them as about 10 feet tall. Now, I think that may be a little bit of an exaggeration because 10 feet tall sounds significantly tall for a marijuana plant.

Q: Alright. But quite tall, well matured, ah, large grown marijuana plants, is that correct?

A: Right. With growing lights and no windows in the room.

Q: Alright. No windows at all in the room, growing lights for an indoor grow, the kind of things that you, ah, one would associate with a clandestine cultivation operation, is that correct?

A: Yes.

Q: The individual indicated that he'd never seen anything like that before, then how or why did the individual believe it was marijuana?

A: Because the people who live there openly talk about the fact that they cultivate marijuana.

Q: Okay. That was several weeks ago, as near as you can put it—

A: —right—

Q: —what, according to this same individual, has happened more recently—specifically last Sunday?

A: This person and their [sic] significant other were at this location again on Sunday and the significant other saw it on Sunday in the same location, in the same room in the garage and conveyed that to the concerned citizen.

Q: And the concerned citizen has reported this to the police without the knowledge of the significant other, is that correct? Or do you know?

A: I don't know.

Q: Alright. How does the concerned citizen, how does he know marijuana or not know marijuana?

A: Ah, formerly a user himself.

Q: How about the significant other?

A: Has just been around it. Is familiar with it because the significant other was a former user.

Q: So they are both familiar with it through personal, prior[ ] experience, is that correct?

A: Yes.

Q: And marijuana was seen—and it was the grown, the actual grow, that the person saw last Sunday, is that correct?

A: Right.

Q: Also, do you have reason to believe that there is marijuana, not growing, but cultivated marijuana—dried and processed marijuana—inside the house?

A: Yes, the concerned citizen also reported to me that some time over the summer, um, they [sic] knew of the marijuana being kept in a bedroom closet.

Q: Knew how? Because the residents of the house said so?

A: Because they talked about it.

Q: Alright. So what we have is sometime over the summer it was—cultivated marijuana—was being kept in the house, and then twice within the last several weeks, once as recently as last Sunday, the actual grow operation was seen in progress in the garage, or in the little [ante]room, which is part of the garage, is that correct?

A: Yes.

Q: You've been a police officer for approximately how long?

A: Including as reserve officer and law enforcement experience, since 1992.

Appellant's App. at 15–20.

At the conclusion of Detective Branham's testimony, the trial court issued a search warrant for the residence and garage at 979 Noe Road. When Detective Branham and other officers executed the warrant at that address, they found in the garage fourteen small marijuana plants, one large marijuana plant, a plastic tote containing a harvested marijuana bud, grow lights, timers, and ventilation and irrigation systems. And in Brown's house, the officers found three pipes, one one-hitter, and one small silver set of hanging scales.

The State charged Brown with Possession of Marijuana, as a Class A misdemeanor. Brown filed a motion to suppress the evidence obtained under the search warrant, and the State opposed the motion. After a hearing, the court denied Brown's motion. The trial court then certified and this court granted Brown's peti-

tion for interlocutory appeal under Indiana Appellate Rule 14(B).

## DISCUSSION AND DECISION

Brown contends that the trial court erred in denying his motion to suppress the evidence collected pursuant to the search warrant. At oral argument, the State conceded that there were no indicia of reliability and, therefore, that there was no probable cause for the issuance of the search warrant. We will, however, discuss the probable cause issue because it bears on our determination of whether the search was executed in good faith reliance on the warrant.

### Probable Cause

■ This court has described the standard of review regarding probable cause for the issuance of a search warrant as follows:

In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* at 238–39, 103 S.Ct. 2317. A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Houser v. State*, 678 N.E.2d 95, 99 (Ind.1997). A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court review-

ing that decision. *Id.* at 98. Although we review de novo the trial court's substantial basis determination, we nonetheless afford "significant deference to the magistrate's determination" as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination. *Id.* at 98–99.

*State v. Spillers*, 847 N.E.2d 949, 952–53 (Ind.2006).

Here, at the probable cause hearing, Detective Branham testified that a "concerned citizen" had informed him that Brown was growing marijuana plants in a garage room. Although the detective had spoken with the caller on the phone, he did not reveal the caller's identity to the court. Regarding the caller's credibility, Detective Branham testified only that the caller was not "working off charges[,]" "was not somebody being paid to give [the detective] information[,]" and was upset that a child resided at the home where the marijuana was being grown. Appellant's App. at 15. But Detective Branham took no steps to verify any of the information related by the concerned citizen before seeking a search warrant. Thus, the concerned citizen, whose identity was not revealed to the trial court, was tantamount to an anonymous informant insofar as the court was concerned. And, at the probable cause hearing, Detective Branham did not mention his telephone conversation with Deputy Dixon. The trial court was unaware that Deputy Dixon was acquainted with the caller.

■ Detective Branham also testified that the caller stated that his significant other had seen marijuana growing in Brown's garage room on the Sunday before the probable cause hearing. But Detective Branham never spoke with the significant other, nor did he obtain information that would demonstrate the signif-

icant other's credibility. Such multiple or "totem pole" hearsay, when wholly uncorroborated, is entitled to no weight in a probable cause determination. *See Hirshey v. State,* 852 N.E.2d 1008, 1013–14 (Ind.App.2006) ("it is clear that hearsay statements, without any indicia of reliability, cannot establish probable cause...."); *Madden v. State,* 263 Ind. 223, 328 N.E.2d 727, 731 (1975) (under former warrant statute requiring informant to have personal knowledge of the facts related, "information that was hearsay to the affiant was multiple or 'totem[ ]pole' hearsay" and was not proper basis for finding probable cause).

The trial court found probable cause to issue the search warrant based solely on Detective Branham's testimony that a concerned citizen had informed him that Brown was growing marijuana plants in a garage room. But, as Brown contends, such hearsay did not in itself provide a credible or reliable factual basis for the warrant. Thus, as the State has conceded, the trial court erred when it determined that there was probable cause to issue the search warrant.

### Good Faith Exception

The State argues that, while the trial court lacked probable cause to issue the search warrant, the evidence obtained under the warrant was admissible under the good faith exception. The good faith exception is codified at Indiana Code Section 35–37–4–5(a), which provides, in relevant part: "In a prosecution for a crime ..., the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith."

But

"[t]he good faith exception will not apply under the following circumstances: (1) the warrant is based on false information knowingly or recklessly supplied; (2) the warrant is facially deficient; (3) the issuing magistrate is not detached and neutral; or (4) the affidavit or sworn testimony upon which probable cause rests is so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable."

*Hirshey,* 852 N.E.2d at 1013 (quoting *Lloyd v. State,* 677 N.E.2d 71, 74–75 (Ind. Ct.App.1997) (footnote omitted), *trans. denied*). The exclusionary rule is designed to deter police misconduct, and in many cases there is no police illegality to deter. *State v. Spillers,* 847 N.E.2d 949, 957 (Ind. 2006) (citation omitted). Although the magistrate or judge is responsible for determining whether an officer's allegations establish probable cause, an officer's reliance on the magistrate's probable cause determination must be objectively reasonable. *Id.*

Here, there is no contention that the trial court was misled by false information, that the warrant was facially deficient, or that the issuing trial court was not detached and neutral. Thus, the question presented is whether it was objectively reasonable for Detective Branham to believe that the warrant was based on probable cause.

In *Jaggers v. State,* 687 N.E.2d 180 (Ind. 1997), our supreme court addressed the "interplay between the 'good faith' exception to the exclusionary rule and the warrant statute, Indiana Code [Section] 35–33–5–2." *Id.* at 181. There, an anonymous caller reported to police that he had personally seen marijuana in and around Jaggers' house on several occasions over the course of several years, including in recent weeks, and that Jaggers was growing marijuana on two plots of land away

from his residence. Police corroborated the caller's information to the extent of confirming that the caller's description of the house was accurate, that Jaggers' truck was at the house, and that marijuana was growing on the described plots of land, which were two miles and six miles from Jaggers' house respectively. Based on the officer's testimony at a probable cause hearing, a magistrate issued a search warrant for marijuana, grow lights, and records at Jaggers' house.

Following his conviction Jaggers appealed, arguing that the search warrant was invalid. After finding that the hearsay evidence failed to satisfy the Fourth Amendment,[4] our supreme court considered whether the good faith exception to the exclusionary rule allowed the admission of evidence obtained under the invalid search warrant. The court held that the

information on which the warrant was based was so lacking in indicia of probable cause that no well-trained officer would reasonably have relied on the warrant. Law enforcement officers are trained to distinguish the incriminating from the innocuous. Federal constitutional cases such as *Gates* and Indiana's warrant statute make at least two things abundantly clear to law enforcement officers who seek a warrant based on hearsay: (1) the information must be shown to be credible; or (2) the information must be shown to be reliable through corroboration or some other means. *Because the informant in this case was anonymous, it would have been clear at the outset to a reasonable police officer that some corroboration of* *the caller's allegations would be critical if a warrant was to be obtained.* Indeed, our decisions have emphasized that corroboration of inculpating information can sometimes be crucial to determining the existence of good faith. *Cf. Bradley [v. State],* 609 N.E.2d [420,] 423–24 [ (Ind.1993) ] (holding that good faith exception was not available in part because there was no corroboration of anonymous caller's allegation linking defendant to the crime).

*Id.* at 185 (emphasis added).

The Indiana Supreme Court addressed similar facts in *Hirshey* and again held that the good faith exception did not apply. There, a person arrested on drug charges told police that she regularly bought drugs from Hirshey. Based on the arrestee's statements, a police detective applied for a warrant to search Hirshey's trailer. The detective had no prior connection with the arrestee, and the probable cause affidavit contained no information regarding the arrestee's credibility. Nevertheless, the trial court issued a warrant, and, upon execution of the warrant, officers found drugs in the home and garage.

On appeal, our supreme court held that the warrant was invalid because the probable cause affidavit did not establish the credibility of the arrestee, on whose hearsay statements it was based.[5] *Hirshey,* 852 N.E.2d at 1013. The court further held that Hirshey's case fit within one of the four circumstances under which the court in *Lloyd* had held that the good faith exception did not apply:

---

**4.** Our supreme court held that the officer had not offered any information to the magistrate to establish the credibility of the anonymous source, nor had he adequately corroborated the anonymous caller's information. *Jaggers,* 687 N.E.2d at 184.

**5.** Specifically, the court held that the arrestee's statements implicating Hirshey were not against penal interest, because they did not expose her to any greater criminal liability, and that the affidavit contained no other indication of the arrestee's credibility. *Hirshey,* 852 N.E.2d at 1013.

Because it is clear that hearsay statements, without any indicia of reliability, cannot establish probable cause, we believe that this situation falls squarely within [reason four, in which the affidavit or sworn testimony upon which probable cause rests is so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable]. It was unreasonable for the officers to rely on the warrant when it was plain that probable cause had not been established.

*Id.* at 1013–14.

This court also held that the good faith exception did not apply in *Newby v. State,* 701 N.E.2d 593 (Ind.Ct.App.1998), *trans. denied.* There we found that there was "no serious effort to develop independent data to corroborate critical facts showing that the [arrestee's] allegations were credible." *Id.* at 603. As a result of that and other factors, we held that the search was "not executed in objective good faith reliance on the warrant." *Id.*

■ The facts in the present case are similar to those in *Jaggers, Hirshey,* and *Newby.* Here, in applying for the search warrant, Detective Branham relied on statements from the concerned citizen. But Detective Branham had no prior acquaintance with the caller. Detective Branham related the caller's purported motive for making the report, but he did not and could not testify regarding the caller's credibility, nor did he take any steps to corroborate the information relat-

ed by the concerned citizen. The detective should have known that some corroboration of the caller's allegations was necessary. *See Jaggers,* 687 N.E.2d at 185 ("Because the informant in this case was anonymous, it would have been clear at the outset to a reasonable police officer that some corroboration of the caller's allegations would be critical if a warrant was to be obtained."). Detective Branham's failure to establish the credibility of the caller or to corroborate the caller's information supports our conclusion that his reliance on the probable cause determination was not objectively reasonable. *See Spillers,* 847 N.E.2d at 957; *Newby,* 701 N.E.2d at 603. Again, the good faith exception does not apply where the affidavit or sworn testimony fails to establish the credibility of the source. *Hirshey,* 852 N.E.2d at 1013; *Newby,* 701 N.E.2d at 603.

■ In support of its contention that the search warrant was executed in good faith, the State also relies on Deputy Dixon's subsequent deposition regarding his acquaintance with the concerned citizen. We do not doubt or question Deputy Dixon's veracity. But, as we have already noted, Deputy Dixon's testimony was not presented to the trial court at the probable cause hearing. The good faith exception rests upon the affidavit or sworn testimony presented before the warrant is issued. After a warrant has been issued, the State cannot backfill with previously undisclosed hearsay evidence to show good faith in the execution of a defective warrant.[6]

---

**6.** Even if Deputy Dixon's after-the-fact deposition testimony were properly before us, the State mischaracterizes his testimony when it says that he "vouched for the credibility" of the unnamed concerned citizen. Appellee's Brief at 10. Deputy Dixon stated that he had never known the caller to lie to him about anything, but that is not equivalent to an affirmation that he knew the caller to be credible. Deputy Dixon also did not state

that he had any personal knowledge of the facts, that the information offered had been otherwise corroborated, or that the individual had provided reliable information to law enforcement in the past. To the contrary, Deputy Dixon testified that, to his knowledge, the caller had never before provided information leading to an arrest. And neither did Deputy Dixon's mere association with the caller as "[j]ust an acquaintance, possibly a casual

## Conclusion

In sum, Detective Branham, who both applied for and executed the search warrant, relied on information from a caller completely unknown to him and did not corroborate the information or the caller's credibility. With no indicia of reliability, corroboration was necessary. The warrant was defective for lack of probable cause.

■ Neither can the State invoke the good faith exception to save an otherwise invalid warrant based on evidence that was not presented at the probable cause hearing. An officer's personal belief in the existence of a warrant is not objectively reasonable when the purported factual basis for that belief is information the officer kept to himself. The good faith exception requires that the probable cause determination be made based on evidence in the record presented to a judicial officer. Because Detective Branham's telephone conversation with Deputy Dixon played no part in the probable cause determination and issuance of the warrant, those facts cannot be used to invoke the good faith exception.

Detective Branham's reliance on the search warrant was not objectively reasonable because it was plain that probable cause had not been established. *See Hirshey*, 852 N.E.2d at 1014; *Spillers*, 847 N.E.2d at 957. Thus, we conclude that the good faith exception does not apply in this case. The trial court erred when it denied Brown's motion to suppress.

Reversed and remanded.

BAKER, C.J., and KIRSCH, J., concur.

friend[,]" establish that individual's credibili-

