

FILED

Feb 25 2015, 10:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

W. Trent Van Haaften
Van Haaften & Farrar, Attorneys At Law LLC
Mount Vernon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David B. Cartwright,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 25, 2015<br><br>Court of Appeals Cause No.<br>65A01-1404-CR-170<br><br>Appeal from the Posey Circuit Court.<br>The Honorable James M. Redwine,<br>Judge.<br>Cause No. 65C01-1303-FB-89 |

**Darden, Senior Judge**

## Statement of the Case

[1] Police officers executed a search warrant at David B. Cartwright's home and found evidence that caused the State to charge him with several methamphetamine-related offenses. The trial court held a bench trial and convicted Cartwright of manufacturing methamphetamine, a Class B felony,

Ind. Code § 35-48-4-1.1 (2006); possession of methamphetamine, a Class C felony, Ind. Code § 35-48-4-6.1 (2006); possession of chemical reagents or precursors with intent to manufacture a controlled substance, a Class C felony, Ind. Code § 35-48-4-14.5 (2006); and maintaining a common nuisance, a Class D felony, Ind. Code § 35-48-4-13 (2001).

[2] Cartwright raises one issue, which we restate as whether the trial court abused its discretion in admitting evidence discovered as a result of the search warrant. Concluding that there was insufficient probable cause to issue a search warrant, and that the evidence was thus inadmissible, we reverse.

## Facts and Procedural History

[3] On March 6, 2013, Detective Jeremy Fortune met with a confidential informant who was incarcerated at the Posey County Jail. The informant had said that he[1] wanted to talk about "drug information in Posey County." Tr. p. 6. Detective Fortune did not know anything about the informant before the meeting. The informant was being held because he had an active arrest warrant for failure to appear in court in Illinois on an unidentified charge.

[4] Detective Fortune took an audiotaped statement from the informant. The informant stated that a person he knew as "Dave" had manufactured methamphetamine at a house in rural Posey County. Appellant's App. p. 31.

---

[1] The record does not identify the informant's gender. We refer to the informant as "he."

The informant explained that he knew of Dave's activities because he had purchased methamphetamine from Dave "within the last 3 or 4 months" and had seen Dave making methamphetamine at that time. *Id.* at 31-32. In addition, the informant stated that he had seen Dave trade methamphetamine for money, pseudoephedrine, and a gun "in the past." *Id.*

[5] The informant further told Detective Fortune that he had been in Dave's house and had seen a number of firearms and ammunition. He had also heard Dave state a belief that he was being followed by police officers and threaten specific officers with harm. The informant stated that Dave told him that if police tried to arrest him, he would not "go down without a fight." *Id.* at 34.

[6] The informant told the officer how methamphetamine is manufactured. He also explained how Dave made methamphetamine and disposed of the waste products. He further told Detective Fortune he believed that Dave had six or eight regular buyers. In addition, he explained how to get to Dave's house, identified Dave's house on a map drawn by Detective Fortune, and described the interior of the house.

[7] The informant told Detective Fortune he had provided information about drug activity to Greg Hannish, an Illinois police officer, "approximately 8 years ago." *Id.* Detective Fortune contacted Officer Hannish, who knew the informant and said that the informant "had provided drug information to him in the past." *Id.*

[8] Based upon the interview, Detective Fortune concluded the informant was referring to Cartwright, who Fortune knew lived in rural Posey County. The area pointed out on the map matched the location of Cartwright's house. In addition, the informant had stated that there was an RV parked in front of Dave's house, and a detective drove by Cartwright's property and saw from the road an RV parked in the front. Other than observing the RV, the officers did not make any independent investigation of the situs and made no further attempts to corroborate the informant's statements regarding any ongoing criminal activity.

[9] Some four years prior to the interview, Detective Fortune had been driving past Cartwright's home when he saw a "fog haze" coming from the home and smelled ammonia and ether. *Id.* at 35. Fortune told the prosecutor what he had observed, but the prosecutor declined to seek a search warrant at that time for lack of sufficient probable cause.

[10] On March 7, 2013, Detective Fortune prepared a probable cause affidavit for a search warrant. He included the information set forth above, except that he did not state in the affidavit that the informant was incarcerated on an Illinois arrest warrant at the time of the interview. Detective Fortune described his extensive training and experience in investigating methamphetamine manufacturing and explained what, in his experience, one would likely find at a location where methamphetamine is being manufactured.

[11] Detective Fortune further stated that, in his opinion, the informant was credible because "given the information [the informant] has provided and given the fact that the description provided by [the informant] for the driving route to 'Dave's' home was known by your affiant to be an accurate description for traveling to Dave or David Cartwright's home." *Id.* at 41.

[12] The court issued a search warrant for Cartwright's property. Detective Fortune and other officers executed the warrant and found an active methamphetamine lab in Cartwright's house. They also found digital scales, a glass pipe, and firearms. Officers found a burn pile on Cartwright's property that contained stripped out battery casings. In addition, officers searched Cartwright's garage and found numerous empty boxes that had contained pseudoephedrine-based pills. They also found a plastic bag that contained methamphetamine residue. Their search of the house yielded only $79 in currency.

[13] The officers arrested Cartwright at his house and read him his *Miranda* rights. Next, the officers took him to jail. During the trip, he acknowledged that he was manufacturing methamphetamine.

[14] At the jail, Cartwright signed a waiver of his *Miranda* rights and submitted to a recorded interview with the officers. He again acknowledged that he manufactured methamphetamine in his house. He also explained what stage of the process he was in at the time the police arrived. In addition, he described how he was using various items and chemicals in the manufacturing process.

Cartwright stated that he made and used methamphetamine to mitigate his back pain. He denied manufacturing methamphetamine to sell to others.

[15] The State charged Cartwright with the offenses described above, plus possession of marijuana. Cartwright filed a motion to suppress all evidence obtained as a result of the search warrant. The court denied Cartwright's motion after a hearing.

[16] Cartwright waived his right to a jury trial. At the bench trial, he raised a continuing objection to the admission of evidence obtained from the execution of the search warrant. The State submitted testimony and photographs describing the methamphetamine lab in Cartwright's house, his signed waiver of his *Miranda* rights, and the transcript of his interview, among other evidence. Next, the State dismissed the charge of possession of marijuana. The court determined that Cartwright was otherwise guilty as charged and sentenced him accordingly. This appeal followed.

## Discussion and Decision

[17] Cartwright argues that the trial court erred in denying his motion to suppress. Because Cartwright appeals after a completed trial, the question of whether the trial court erred in denying the motion is no longer viable. *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). Instead, the issue is more appropriately framed as whether the trial court abused its discretion when it admitted the evidence at trial. *Id.* When we review a trial court's ruling on the admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the

evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.*

[18] Cartwright claims that all of the evidence resulting from the search of his house is inadmissible because there was no probable cause to issue the search warrant in the first place. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[19] The text of article I, section 11 of the Indiana Constitution contains nearly identical language. Indiana has codified these constitutional principles at Indiana Code section 35-33-5-2 (2005), as follows:

> no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
>
> (1) particularly describing:
>
> (A) the house or place to be searched and the things to be searched for; or
>
> (B) particularly describing the person to be arrested;
>
> (2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things as are to be searched for are there concealed; or

(B) the person to be arrested committed the offense; and

(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

(b) When based on hearsay, the affidavit must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

[20] In deciding whether to issue a search warrant, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Hayworth v. State*, 904 N.E.2d 684, 694 (Ind. Ct. App. 2009). The duty of the reviewing court, which for these purposes includes both the trial court ruling on the motion to suppress and the appellate court, is to determine whether the magistrate had a substantial basis for concluding that probable cause existed. *Jaggers v. State*, 687 N.E.2d 180, 181-82 (Ind. 1997). We review the trial court's substantial basis determination de novo, but we afford significant deference to the magistrate's determination. *Brown v. State*, 905 N.E.2d 439, 444 (Ind. Ct. App. 2009). We consider only the evidence presented to the issuing magistrate

and not additional justifications or facts presented after the search. *Jaggers*, 687 N.E.2d at 182.

[21] The parties' dispute focuses almost entirely upon the credibility of the confidential informant because the crucial portion of Detective Fortune's probable cause affidavit is based on the informant's hearsay statements and lacks any independent and corroborating investigation by law enforcement. An affidavit based on hearsay must contain reliable information establishing the informant's credibility and a factual basis for the hearsay statements or information that, in the totality of the circumstances, corroborates the hearsay. Ind. Code § 35-33-5-2(b). Uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant. *Jaggers*, 687 N.E.2d at 182 (citing *Illinois v. Gates*, 462 U.S. 213, 227, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

[22] The trustworthiness of hearsay for purposes of proving probable cause can be established in a number of ways, including demonstrating: (1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. *Methene v. State*, 720 N.E.2d 384, 388 (Ind. Ct. App. 1999).

[23] Cartwright argues that the probable cause affidavit failed to establish the informant's credibility. We agree. The affidavit does not indicate that the

informant gave correct information in the past. At the time of the issuance of the search warrant, the affidavit states that the informant provided "drug information" to an Illinois police officer eight years prior to the interview, but there is no explanation of whether the information was correct, accurate, or had led to any arrests and convictions. At the suppression hearing, Detective Fortune later recalled that the informant's information had resulted in an arrest in Illinois, but we do not consider supporting evidence that is offered after the warrant has been issued and acted upon. *Jaggers*, 687 N.E.2d at 182.

[24] In addition, the affidavit does not include independent police investigation that adequately corroborates the informant's statements. The police confirmed that the informant adequately described the location of Cartwright's house and that there was an RV in Cartwright's front yard. However, those facts are readily available to the general public. *See Hayworth*, 904 N.E.2d at 696 (independent investigation inadequate to establish informant's credibility where investigation corroborated only publicly available facts).

[25] The State notes that Detective Fortune had encountered sights and odors consistent with methamphetamine manufacturing at Cartwright's property some four years prior to the interview with the informant and asserts that these observations corroborate the informant's statements. However, our review of the record reveals that Detective Fortune's request for a search warrant four years prior was rejected by the prosecutor for lack of probable cause. We further note that there is no evidence that he attempted to conduct an independent investigation to substantiate the allegations of odor that he

observed. Thus, we find that his four-year-old observations are stale and do not corroborate the informant's information. *See State v. Haines*, 774 N.E.2d 984, 990 (Ind. Ct. App. 2002) (informant's testimony that he purchased cocaine at defendant's home two to six weeks prior to probable cause hearing was stale information that could not support a finding of probable cause), *trans. denied*.

[26] Regarding the third factor, showing the basis for the informant's knowledge, the affidavit establishes that the informant was generally familiar with the process of manufacturing methamphetamine. However, there is nothing in the affidavit to establish the informant's knowledge of Cartwright's activities other than the informant's own statements. Finally, the informant did not predict conduct or activities by Cartwright that are not ordinarily easily predicted.

[27] The State contends that the informant's credibility was established because his admission of involvement in methamphetamine sales was a statement against penal interest. A declaration against penal interest can furnish sufficient basis for establishing the credibility of an informant, but the declaration must have tended to subject the declarant to criminal liability such that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. *Newby v. State*, 701 N.E.2d 593, 599 (Ind. Ct. App. 1998).

[28] Here, the informant told Detective Fortune, and the affidavit stated, that the informant had "purchased or obtained methamphetamine" from Cartwright, at Cartwright's house, "within the last 3 or 4 months." Appellant's App. p. 31.

The informant had paid Cartwright for methamphetamine and had on another occasion given Cartwright boxes of pseudoephedrine-containing pills in exchange for methamphetamine.

[29] The informant's admission is not irrefutable evidence of criminal liability, particularly because he had not been charged with a crime and the admission was offered three to four months after the fact, without any independent evidence. Indeed, Detective Fortune declined to arrest the informant after the interview because he "didn't have any evidence" of the informant's alleged admitted crimes, thus indicating that the detective believed that the informant's mere statements were insufficient to support a criminal charge. Tr. p. 33. Furthermore, in the portion of the affidavit where Detective Fortune explained why he believed the informant to be credible, Detective Fortune cited the informant's description of the location of Cartwright's home, not the informant's admission of criminal activity, as of proof of reliability.

[30] Under these circumstances, a reasonable person in the informant's position could have concluded that, without any independent investigation or corroborating evidence from law enforcement, he or she was unlikely to be subjected to criminal liability for admitting to buying methamphetamine in the past. Argumentative and to the contrary, a person in the informant's position could conclude that assisting in an Indiana methamphetamine investigation might result in favorable treatment in the pending Illinois criminal matter. We cannot conclude that the informant's statements were sufficiently against his penal interests to establish his credibility.

In the absence of proof of the informant's credibility or corroboration under the totality of the circumstances, the informant's hearsay statements were insufficient to establish probable cause, and the trial court should not have issued the search warrant. *See Hayworth*, 904 N.E.2d at 697 (affidavit did not establish probable cause for a search warrant where informant's claims were uncorroborated).

Nevertheless, lack of probable cause does not automatically require the suppression of evidence obtained during a search. *Id.* Indiana law provides:

> (a) In a prosecution for a crime or a proceeding to enforce an ordinance or a statute defining an infraction, the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith.
>
> (b) For purposes of this section, evidence is obtained by a law enforcement officer in good faith if:
>
> (1) it is obtained pursuant to:
>
> (A) a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid; or
>
> (B) a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated; and
>
> (2) the law enforcement officer, at the time he obtains the evidence, has satisfied applicable minimum basic training requirements

established by rules adopted by the law enforcement training board under IC 5-2-1-9.

Ind. Code § 35-37-4-5 (1983).

[33] Courts applying the statutory good faith exception have concluded that the good faith exception does not apply where:

> (1) the warrant is based on false information knowingly or recklessly supplied; (2) the warrant is facially deficient; (3) the issuing magistrate is not detached and neutral; or (4) the affidavit or sworn testimony upon which probable cause rests is so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable.

*Brown*, 905 N.E.2d at 445 (quoting *Hirshey v. State*, 852 N.E.2d 1008, 1013-14 (Ind. Ct. App. 2006), *trans. denied*). An officer's reliance on the magistrate's probable cause determination must be objectively reasonable. *Id.*

[34] In this case, there is no claim that the warrant was facially deficient or that the issuing magistrate was not detached and neutral. Cartwright claims Detective Fortune omitted material information from the affidavit, engaging in "deliberate, reckless, or grossly negligent conduct." Appellant's Br. p. 18. Specifically, Detective Fortune did not state in the affidavit that the informant was incarcerated in the Posey County Jail on an Illinois arrest warrant. Cartwright contends that this omission amounted to a misrepresentation that may have affected the reviewing magistrate's consideration of the informant's credibility.

[35] Detective Fortune testified at the suppression hearing that he withheld the fact of the informant's incarceration not out of any intent to mislead, but rather out of concern that the information would reveal the informant's identity and place him in danger. In any event, we conclude that the good faith exception is inapplicable here because Detective Fortune's affidavit is so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable. The informant gave Detective Fortune information that was at least three to four months old. The officers corroborated only facts that were readily available to the general public, i.e., observing an RV parked at the home. They did not attempt to confirm the informant's claim of an ongoing methamphetamine dealing operation by placing surveillance on Cartwright's property. In addition, Detective Fortune also relied on his stale four-year-old prior observation of Cartwright's home, which had been rebuffed by the prosecutor for lack of probable cause. The officers' reliance on a warrant issued on essentially uncorroborated hearsay from an anonymous informant was objectively unreasonable. *See Jaggers*, 687 N.E.2d at 186.

[36] In the absence of probable cause justifying a search warrant, the officers' search of Cartwright's home violated his federal and state constitutional protections against unreasonable search and seizure. Consequently, the trial court abused its discretion in admitting evidence obtained as a result of the search. *See id.*; *see also Dolliver v. State*, 598 N.E.2d 525, 529 (Ind. 1992) (search warrant unsupported by probable cause where police did not independently corroborate informant's statements, so the subsequent search violated defendant's federal

and state constitutional rights and the evidence was inadmissible). The erroneously admitted evidence includes Cartwright's incriminating statements in the police car and the transcript of his post-arrest questioning at the jail, because the statements were the fruit of his arrest, and being informed of his *Miranda* rights prior to confessing in the police car and at the jail did not purge the taint of the unconstitutional search. *See, e.g. Clark v. State*, 994 N.E.2d 252, 271 (Ind. 2013) (defendant's confession to possession of marijuana was not admissible where it was not an act of free will and did not purge the taint of unlawful detention).

# Conclusion

[37] We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

[38] Reversed and remanded.

[39] Mathias, J., concurs.

[40] Baker, J., dissents.

David B. Cartwright,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
65A01-1404-CR-170

**Baker, Judge, dissenting.**

I respectfully dissent. I agree with the majority's conclusion that the probable cause affidavit failed to establish the CI's credibility and, consequently, that there was a lack of probable cause. I part ways with the majority, however, in the application of the good faith exception.

The good faith exception to the exclusionary rule was originally announced in *United States v. Leon*, 468 U.S. 897 (1984). As explained by our Supreme Court,

> *Leon* held that where police officers rely in objective good faith on a warrant later found to be defective, so that suppression would not further the exclusionary rule's objective of deterring police misconduct, the Fourth Amendment does not require that the evidence be excluded. However, the Supreme Court cautioned in *Leon* that certain

police conduct would not qualify for the exception, including where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

*Figert v. State*, 686 N.E.2d 827, 831 (Ind. 1997) (quoting *Leon*, 468 U.S. at 923).

[43]     In this case, Detective Fortune's affidavit included the following attestations:

- Detective Fortune spoke with a CI, who reported that a person named "Dave," who lived in a farmhouse in northern Posey County, was involved in the manufacture of methamphetamine.
- The CI reported that s/he had purchased methamphetamine from "Dave" within the last three or four months.
- The CI reported that s/he had witnessed "Dave" trading methamphetamine to other persons in exchange for boxes of pseudoephedrine pills, money, and a muzzle loader firearm.
- The CI reported "Dave's" farmhouse contained assault rifles, shotguns, and handguns.
- The CI reported that s/he personally observed "Dave" manufacture methamphetamine in the barn and farmhouse.
- The CI also reported that "Dave" kept anhydrous ammonia, a common ingredient used to manufacture methamphetamine, on his property.
- The CI confirmed to Detective Fortune that s/he had experience in the illegal manufacture of methamphetamine and was familiar enough with the process to be able to identify it.
- The CI stated that s/he had provided useful information regarding drug activity to Officer Greg Hannish in southern Illinois approximately eight years ago.  Detective Fortune contacted Officer Hannish, who confirmed the CI's statement.
- The CI drew a general map of the area leading to "Dave's" home and a map of the layout of the property itself.
- Detective Fortune was familiar with Cartwright, who lives in a farmhouse in northern Posey County.  The location of Cartwright's residence is consistent with the map drawn by the CI.  The layout of

Cartwright's property, including building locations, is consistent with the map drawn by the CI.

- Approximately four years earlier, Detective Fortune was driving in the area of Cartwright's residence when he observed a "fog haze" emanating from the home and could smell anhydrous ammonia. At that time, the prosecutor declined to seek a search warrant based on that information.

Appellant's App. p. 22-42. I agree that there was insufficient investigation done to establish the credibility of the CI. I also agree that each of these alleged facts, taken alone, does not establish probable cause. But I believe that the totality of these allegations easily exceed the threshold described by the United States Supreme Court in *Leon*. In other words, I do not believe that this affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.[2]

[44] This conclusion does not end the inquiry, however, inasmuch as Detective Fortune was both the affiant and one of the police officials who executed the search warrant. Under certain circumstances, this overlap can render the good faith exception inapplicable. In *Figert*, our Supreme Court considered precisely this issue: "[b]ecause the same officer here filed the probable cause affidavit and participated in the execution of the warrant based on the affidavit, we must decide whether the officer's reliance on the warrant was entirely unreasonable

---

[2] The fact that Detective Cartwright omitted the information that the CI was currently incarcerated in the Posey County Jail does not change my analysis. The detective was merely withholding that information in an attempt to protect the identity and safety of the CI, which seems entirely prudent given the threatening statements made by Cartwright in the CI's presence.

notwithstanding the magistrate's decision to issue the warrant." 686 N.E.2d at 831-32.

[45] The *Figert* Court noted that "[m]ost Indiana appellate decisions upholding the admission of evidence under the good faith exception involved reliance on hearsay whose credibility was later found to be inadequately established." *Id.* at 832. In *Figert*, however, "the officer obtained the warrant primarily based on his own observations and firsthand knowledge." *Id.* Under those circumstances, "the officer's own opinion . . . cannot be relied on to authorize a search not supported by the facts." *Id.* at 833. Consequently, the *Figert* Court found that the officer's reliance was not objectively reasonable under *Leon*, and the good faith exception was inapplicable.

[46] Here, as opposed to *Figert*, Detective Fortune was relying primarily on "technically flawed hearsay . . . that in hindsight might make reliance on the warrant objectively reasonable." *Id.* at 832. The vast majority of allegations supporting the request for a search warrant rested solely on the CI. And while I ultimately agree that the credibility of the CI was insufficiently established such that the hearsay amounted to probable cause, Detective Fortune's reliance on the CI's allegations and the warrant itself were objectively reasonable. As a result, the fact that Detective Fortune both signed the affidavit and helped to execute the warrant do not render the good faith exception inapplicable. *See United States v. Kinison*, 710 F.3d 678, 686-87 (6th Cir. 2013) (holding that where the government was not relying on subjective knowledge of the affiant, the fact

that affiant also helped to execute the warrant does not prevent application of the good faith exception).

Because I believe that this warrant was executed in good faith, notwithstanding the lack of probable cause, I would affirm the trial court's admission of the evidence seized in the execution of that warrant.