**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

May 27 2014, 10:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**MICHAEL J. STAPLETON**
**ELIZABETH B. SEARLE**
Ball Eggleston PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEES DENNIS
G. LOCKREY, M.D., and SIGMA
MEDICAL GROUP, LLC:

**LIA M. HANSON**
**KAREN R. ORR**
Stuart & Branigin LLP
Lafayette, Indiana

ATTORNEYS FOR APPELLEES JAMES
D. PIKE, D.O., and PIKE MEDICAL
CONSULTANTS, P.C.:

**MICHAEL ROTH**
**BRETT T. CLAYTON**
Eichhorn & Eichhorn, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TAMARA J. SHIDLER, surviving spouse of MICHAEL R. SHIDLER, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 79A05-1308-CT-410 |
| | ) | |
| DENNIS G. LOCKREY, M.D., and SIGMA MEDICAL GROUP, LLC, d/b/a SIGMA MED EXPRESS CARE, and JAMES D. PIKE, D.O., PIKE MEDICAL CONSULTANTS, PC, a/k/a EXPEDITE HEALTHCARE, | ) ) ) ) ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1205-CT-24

**May 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

In early October of 2009, Michael Shidler, the late husband of Appellant-Plaintiff Tamara Shidler, underwent an ankle fusion procedure. On October 31, 2009, Michael went to the Sigma Med Express Care, operated by Appellee-Defendant Sigma Medical Group, LLP, and saw Appellee-Defendant Dr. Dennis Lockrey, M.D. Dr. Lockrey diagnosed Michael with pneumonia and prescribed an antibiotic. On November 3, 2009, Michael went to Appellee-Defendant Pike Medical Consultants, PC, and saw Appellee-Defendant Dr. James D. Pike, D.O., for a reevaluation of his long-standing hypertension. On November 7, 2009, Michael died, with the cause of death being respiratory arrest due to acute pulmonary embolis.

On March 30, 2010, Tamara filed a medical malpractice complaint with the Indiana Department of Insurance, naming Dr. Lockrey and his practice group ("the Sigma Defendants"), Dr. Pike and his practice group ("the Pike Defendants"), and a third doctor and his practice group. On May 14, 2012, a medical review panel, which included Dr. Luong Khuong, M.D., issued its opinion, finding a breach in the standard of care by Drs. Lockrey and Pike but that their malpractice did not cause Michael's death. The next day, Tamara filed a medical malpractice complaint in Tippecanoe Superior Court, naming the Sigma and Pike Defendants.

At some point, Tamara began consulting with pathologist Dr. Thomas Anderson, M.D., who was expected to serve as an expert witness on her behalf. Ultimately, the Sigma Defendants filed a request to have Dr. Anderson barred due to late disclosure, a request that was granted in part. Tamara did not call Dr. Anderson at trial. Tamara did call two of the three doctors who comprised the medical review panel to the stand. Tamara attempted, but was not allowed, to presumably have one of the doctors testify that although he was not certain that Michael already had a pulmonary embolism when he visited Drs. Lockrey and Pike, he thought that it was more probable than not. The Pike Defendants called Dr. John Kress to testify on their behalf, who opined that Dr. Pike had met the standard of care. On cross-examination, Dr. Kress was not permitted to opine regarding the age of the clot that killed Michael or when it could have been diagnosed. Tamara also unsuccessfully attempted to elicit testimony from Dr. Kress regarding Dr. Lockrey's treatment of Michael. The Pike Defendants also called Dr. Daniel Gay, who was similarly prevented from testifying regarding Dr. Lockrey's treatment of Michael. A jury ruled in favor of all defendants.

Tamara contends on appeal that (1) the trial court abused its discretion in refusing to allow Dr. Khuong to testify regarding whether he thought it was probable that Michael was already suffering from a pulmonary embolism when he saw Drs. Lockrey and Pike, (2) the trial court abused its discretion in limiting her cross-examination of Drs. Kress and Gay, (3) the trial court abused its discretion in limiting her ability to use Dr. Anderson, and (4) the cumulative error of excluding and/or limiting expert testimony requires reversal. We affirm.

3

## FACTS AND PROCEDURAL HISTORY

In early October of 2009, Shidler underwent an ankle fusion operation. On October 31, 2009, Shidler went to Sigma Med Express Care, where he was seen by Dr. Lockrey. Shidler reported that he had had ankle fusion surgery and was experiencing an occasionally productive cough, feelings of hot/cold, and shortness of breath on exertion. Dr. Lockrey ordered a chest x-ray and ultimately diagnosed Michael with pneumonia, prescribing antibiotics. On November 3, 2009, Michael was seen by Dr. Pike, with the listed reason for the appointment being to check on Michael's long-standing hypertension. Michael was no longer coughing or experiencing shortness of breath. Michael died on November 7, 2009, with the cause of death being determined to be respiratory arrest due to acute pulmonary embolis. A pulmonary embolism is caused when something, typically a clot formed in the veins deep in the muscle groups of the lower extremities, breaks free, travels through the venous system through the heart, and becomes lodged there in such a way as to cut off the flow of blood to the lungs.

On March 30, 2010, Tamara filed a medical malpractice complaint with the Indiana Department of Insurance, naming Drs. Lockrey and Pike, their practice groups, and a third doctor and his practice group. On May 14, 2012, a three-member medical review panel issued its opinion, unanimously finding a breach in the standard of care by Drs. Lockrey and Pike but that their malpractice did not cause Michael's death. On May 15, 2012, Tamara filed a medical malpractice complaint in Tippecanoe Superior Court, naming Drs. Lockrey and Pike and their practice groups.

On August 9, 2012, the trial court issued a scheduling order requiring expert witnesses to be identified and a list thereof to be exchanged with opposing counsel and filed with the trial court by March 15, 2013, and for all discovery to be completed by June 14, 2013. In November of 2012, counsel for Dr. Lockrey requested the creation of pathology slides from tissue retained from Michael's autopsy. In December of 2012, the parties began arranging for the preparation and circulation of the pathology slides. At the time, Tamara was already consulting with pathologist Dr. Anderson. On March 13, 2013, the parties filed a joint motion to extend the pathology expert deadline, which motion was granted, extending the deadline to twenty days after the last party finished reviewing the pathology slides.

On March 18, 2013, both the Sigma and Pike Defendants filed their expert witness disclosures. On April 15, 2013, the parties filed their final witness and exhibit lists, with Tamara's list containing the name "Thomas P. Anderson, M.D.[,]" with no further detail regarding his anticipated testimony. Appellant's App. p. 442. On April 19, 2013, counsel for the Pike Defendants inquired regarding Dr. Anderson, asking Tamara to identify him, indicate whether he was an expert witness or treating physician, and supplement her previous response to discovery requests as to the substance of his anticipated testimony. On May 7, 2013, counsel for the Sigma Defendants sent Tamara's counsel a letter requesting a supplemented response as to whether Dr. Anderson was an expert witness. Tamara did not respond to the correspondence.

On May 14, 2013, the Pike Defendants submitted a supplemental expert witness disclosure. On May 15, 2013, the Sigma defendants submitted an amended final witness

and exhibit list. On June 21, 2013, Tamara's counsel emailed counsel for the Pike Defendants, identifying Dr. Anderson as "the pathologist we have been using as our consultant" and indicating that he might be called as a rebuttal witness. Appellant's App. p. 363. On June 24, 2013, the Sigma Defendants filed a motion *in limine*, which included a request to bar the testimony of Dr. Anderson on the basis of late disclosure of his identity, his status as a potential expert witness, and the anticipated substance of his testimony. On July 8, 2013, the trial court granted the Sigma Defendants' motion in part, ruling that Dr. Anderson's opinions regarding causation would be excluded due to Tamara's failure to timely disclose those opinions. The trial court also ruled, however, that Dr. Anderson's opinions regarding the Defendants' expert witnesses' methodology were not excluded.

On July 10, 2013, Tamara provided a disclosure of Dr. Anderson's opinions, stating that Dr. Anderson had formed the opinion that the methodology of the defendants' experts was faulty. On July 11, 2013, the Sigma Defendants filed an objection to the late disclosure of Dr. Anderson's methodology opinions. The trial court denied this motion without prejudice, allowing for renewal after the deposition of Dr. Anderson. Tamara did not call Dr. Anderson to testify at trial in any capacity.

The jury trial began on July 15, 2013, and lasted eight days. Among others, Tamara called Dr. Khuong to the stand. On direct examination, the following exchanges occurred:

> [Tamara's counsel] All right. The second part of your opinion, let's go to the second part of your opinion. Was that -- the conduct complained

of was not a factor in the result of the damages.  And how did -- can you tell the jury how you reached that opinion?

[Dr. Khoung]  The reason for that reason is that since we don't know when the blood clot is formed, we don't know whether the clot formed earlier and that patients have (indiscernible) until then.  And we don't know when the blood clot ever would go in the lung; we don't know.

Tr. p. 535.

[Tamara's counsel]  How did you -- what made you decide that the conduct complained was not a factor in the resulting damages?

[Dr. Khoung]  As I said before, you know, because even though they found the symptoms, and the (indiscernible) factor, and the history of the patient problem, we think that it could be [pulmonary embolism] but because we didn't know whether the blood clot formed before, or after, or at that time.  So that's why we came into that conclusion.

[Tamara's counsel]  Did you feel that -- did you feel like you had enough expertise to make that opinion?

[Dr. Khoung]  Yes.

[Tamara's counsel]  Okay.  Do you have -- do you have an opinion base upon a reasonable medical probability as to when this patient was first experiencing pulmonary embolism activity?

[Pike Defendants' counsel]  Objection, your honor.  And I would ask to voir dire this witness.

    ….

[Pike Defendants' counsel]  I'm going to show you your deposition, your sworn testimony on page 114 the last page.  Other side, line 7.  When I ask you this question you gave this answer; did you not?

[Dr. Khoung]  14?

[Pike Defendants' counsel]  It's 114 line 7.  When -- it says when.

    "Q  When a clot broke loose" --

[Dr. Khoung]  Hold on.

[Pike Defendants' counsel]  -- "you don't know and you don't have an opinion?

    "[Dr. Khoung]  No."

    Do you see that

[Dr. Khoung]  I'm looking.  Oh, the last one.

[Pike Defendants' counsel]  Did I ask you that question and did you give that answer?

[Dr. Khoung]  Yes.

[Pike Defendants' counsel]  Okay.  And I also asked you on page 113 -- it's a condensed transcript I think -- yeah, so it's on the same page.  113 line 15:

7

"[Pike Defendants' counsel]  Are you in this case referring to a pathologist as to when a pulmonary embolism arose?"

"[Dr. Khoung]  Yeah, I would do that.  Yeah."

Did I ask you that question and did you give that answer?

….

[Dr. Khoung]  Yes.

[Pike Defendants' counsel]  Thank you.…  Your honor, this witness has no basis for answering the question [Tamara's counsel] asked.  He has testified he has no opinion and he would defer to a pathologist on it.

Tr. pp. 542-45.

[Sigma Defendants' counsel]  And you told me at your deposition that that was because you had no way of knowing when the pulmonary embolism arise; is that right?

[Dr. Khoung]  I agree with that.

[Sigma Defendants' counsel]  And that you would defer to a pathologist as to when that [pulmonary embolism] went to the lungs?

[Dr. Khoung]  Yes.

Tr. p. 570.

During the ensuing sidebar, Tamara's counsel argued the following:

This I believe to be the real issue.  This gentleman and the next witness testified based upon a standard of absolute certainty.  Absolute certainty they did.  They said they couldn't be absolutely certain when the pulmonary activity occurred, when the blood clot was formed.  They couldn't be absolutely certain, okay.

And that's not the standard that we apply, but that's what they did, that's how they reached their causation opinion.  And were asked about it in their deposition -- when asked about it in their deposition if it was probable that his patient was having pulmonary embolism activity on different dates, he said yes.  He said yes, it's probable.  And he repeated it.

And what it shows is that they applied the wrong standard for evaluating the evidence.  The foundational thing is a matter of asking him his experience in diagnosing [pulmonary embolisms] as they seem [sic] them in the emergency room.  That's a whole other -- that's not the issue.  The issue is the foundation for the opinion and it's not based on probability -- preponderance of the evidence.  They based it on -- they wanted absolute certainty.

8

Tr. pp. 548-49.  After lengthy discussion, the trial court sustained the objection to the question:

> THE COURT:  I'm going to sustain the objection to that question.  The opinion that [Dr. Khuong] gave was it was not a factor.  You can ask him about how he got there and what standard he applied to come to that decision but you can't ask him to change his opinion.

Tr. p. 555.

The Pike Defendants called Dr. John Kress to the stand.  Dr. Kress opined that even though Dr. Pike did not diagnose or rule out a pulmonary embolism, Dr. Pike met the standard of care "[b]ecause [Michael's] visit was a focused visit to evaluate his hypertension" and "not a head to toe initial history and physical with every possible problem that the patient is being -- that the patient has."  Tr. p. 1046.  On cross-examination, when Tamara attempted to elicit an opinion from Dr. Kress regarding Dr. Lockrey's performance, the trial court sustained the Lockrey Defendants' objection on the basis that such questions were outside the scope of direct examination.  The Pike Defendants also called Dr. Daniel Gay to testify as an expert on their behalf.  When Tamara attempted to elicit opinion from Dr. Gay regarding Lockrey's treatment of Michael, the Lockrey Defendants' objection was sustained.  The jury found in favor of all defendants and against Tamara.

## DISCUSSION AND DECISION

The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002).  We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that

9

discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005). We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006).

## I. Whether the Trial Court Abused its Discretion in Limiting Dr. Khuong's Testimony

Tamara contends that the trial court improperly denied her leave to elicit testimony from D. Khuong that it was his opinion that it was more probable than not that Michael already had a pulmonary embolism when he was seen by Drs. Lockrey and Pike.

> "A trial court's determination regarding the admissibility of expert testimony under Rule 702 is a matter within its broad discretion and will be reversed only for abuse of that discretion." *TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 216 (Ind. 2010) (citations omitted). We presume that the trial court's decision is correct, and the burden is on the party challenging the decision to persuade us that the trial court has abused its discretion. *Id.*
> The trial court is considered the gatekeeper for the admissibility of expert opinion evidence under Rule 702. *Doe v. Shults-Lewis Child & Family Servs., Inc.*, 718 N.E.2d 738, 750 (Ind. 1999). With regard to the admissibility of expert testimony, Rule 702 provides:
>
> > (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*Bennett v. Richmond*, 960 N.E.2d 782, 786 (Ind. 2012).

Appellees contend that refusing to allow Dr. Khuong to opine regarding whether Michael had already developed a pulmonary embolism when seen by Drs. Lockrey and Pike was proper because Tamara failed to lay a proper foundation for such an opinion.[1] More specifically, Appellees contend that no showing was made that any such opinion would have been based on anything more than pure speculation.

> Speculation will not pass for an expert opinion under Rule 702. *See Howerton v. Red Ribbon, Inc.*, 715 N.E.2d 963, 966 (Ind. Ct. App. 1999) ("Knowledge admissible under the Rule must connote 'more than subjective belief or unsupported speculation.'") (quoting *Hottinger v. Trugreen Corp.*, 665 N.E.2d 593, 596 (Ind. Ct. App. 1996)), *trans. denied*. To be admissible, an expert's opinion that an event caused a particular injury must be based on something more than coincidence. *See Hannan v. Pest Control Servs., Inc.*, 734 N.E.2d 674, 682 (Ind. Ct. App. 2000), *trans. denied*. An expert's opinion on causation in a medical malpractice case must rest on "'an application of particular scientific facts to particular data about the instant case.'" *Ind. Mich. Power Co. v. Runge*, 717 N.E.2d 216, 237 (Ind. Ct. App. 1999) (emphasis removed) (quoting *Porter v. Whitehall Labs., Inc.*, 791 F. Supp. 1335, 1345 (S.D. Ind. 1992)).

*Clark v. Sporre*, 777 N.E.2d 1166, 1170-71 (Ind. Ct. App. 2002).

We conclude that the record is sufficient to sustain the trial court's ruling. Dr. Khuong was repeatedly asked if he knew when the blood clot that led to Michael's pulmonary embolism formed, and he repeatedly responded that he did not know. Consequently, it would not have been unreasonable to conclude that any opinion offered on the matter would have been based on speculation. Moreover, Dr. Khuong testified in a pre-trial deposition, relevant parts of which were read into the trial record and were not contradicted, that he would have referred the question to a pathologist, further supporting

---

[1] Appellees also contend that Tamara waived this challenge for failure to make an adequate offer of proof below regarding what Dr. Khuong's testimony would have been. We find the record sufficient to allow for review of this claim on the merits.

a conclusion that Dr. Khuong was insufficiently qualified to offer an opinion on the matter. The trial court did not abuse its discretion in limiting Dr. Khuong's testimony regarding his possible opinion about when the blood clot that led to Michael's pulmonary embolism formed.

## II. Whether the Trial Court Abused its Discretion in Limiting Tamara's Cross–Examination of Drs. Kress and Gay

Tamara contends that the trial court improperly limited her cross-examination of Drs. Kress and Gay, both of whom were retained as experts by the Pike Defendants and from whom Tamara sought opinions regarding Dr. Lockrey's performance. Appellees counter that Tamara failed to make an adequate offer of proof with respect to either doctor's anticipated testimony and so has waived the challenges for appellate review.

> [W]hen the trial court rules that a witness may not testify, the proponent of the excluded testimony must make an offer of proof to preserve the ruling for appellate review. *State v. Fischer* (1986), Ind. App., 493 N.E.2d 1265, 1267, overruled on other grounds by *Bohall v. State* (1989), Ind., 546 N.E.2d 1214. "An offer of proof provides the appellate court with the scope and effect of the area of inquiry and the proposed answers, in order that it may consider whether the trial court's ruling excluding the evidence was proper." *Tyson v. State* (1993), Ind. App., 619 N.E.2d 276, 281, *trans. denied.* Thus, "the offer of proof must demonstrate the substance, purpose, relevancy, and materiality of the excluded evidence in order to enable the appellate court to determine on appeal whether the exclusion was proper." *Id.*

*Donaldson v. Indpls. Pub. Transp. Corp.*, 632 N.E.2d 1167, 1170 (Ind. Ct. App. 1994).

We agree with Appellees. When responding to objections during Dr. Kress's testimony at trial, Tamara said only that "[h]e does have opinions about [Dr. Lockrey's performance.] He's already stated his opinions on deposition, and he reviewed the whole case in context." Tr. p. 1113. Dr. Kress's deposition, however, was not admitted as

12

evidence at trial, and Tamara elaborated no further on what Dr. Kress's testimony would have been. During Dr. Gay's testimony, Tamara made no attempt at an offer of proof when responding to objections to her attempts to elicit opinions regarding Dr. Lockrey's performance. Without knowing the substance, purpose, relevance, or materiality of the evidence Tamara sought to introduce at trial, we have no basis on which to review the merits of her claims. Tamara has failed to establish an abuse of discretion in this regard.

### III. Whether the Trial Court Abused its Discretion in Limiting the Scope of Dr. Anderson Potential Testimony

Tamara contends that the trial court abused its discretion in limiting, pretrial, the scope of opinions that Dr. Anderson could provide if called to testify. As Appellees point out, however, Tamara did not call Dr. Anderson to testify at trial in any capacity. Essentially, Tamara is seeking review of the trial court's partial grant of the Sigma Defendant's motion *in limine*.

> As a preliminary ruling, the grant of a motion *in limine* is not itself reviewable on appeal. Likewise, error cannot be predicated on an objection to the grant of the motion. To preserve error, a party, out of the hearing of the jury, must propose to ask a certain question at trial and have the court prohibit it. Failure to offer the excluded material constitutes waiver of the issue.

*Rohrkaste v. City of Terre Haute*, 470 N.E.2d 738, 741 (Ind. Ct. App. 1984), *trans. denied*. By failing to attempt to elicit testimony from Dr. Anderson at trial, and then to object to any that was excluded, Tamara has waived this issue for appellate review.

### IV. Cumulative Error

Tamara finally contends that even if any one of the trial court's alleged errors was, by itself, insufficient to warrant reversal, their cumulative effect does. Because Tamara

13

has not established that the trial court committed any errors, we need not consider their alleged cumulative effect.

We affirm the judgment of the trial court.

KIRSCH, J., and MAY, J., concur.