## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 05 2015, 8:30 am
CLERK
of the supreme court,
court of appeals and
tax court

**APPELLANT PRO SE**

Eqwan Garrett
Pendleton, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eqwan Garrett, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | November 5, 2015 <br><br> Court of Appeals Case No. <br> 49A02-1408-PC-589 <br><br> Appeal from the Marion Superior Court. <br> The Honorable Steven Eichholtz, Judge. <br> The Honorable David Seiter, Commissioner. <br> Cause No. 49G20-0908-PC-74802 |

**Friedlander, Senior Judge**

[1] Eqwan Garrett, pro se, appeals the denial of his petition for post-conviction relief presenting the following consolidated and restated issues:

    1.     Did the post-conviction court err in rejecting Garrett's claim of ineffective assistance of trial counsel.

2. Did the post-conviction court err in rejecting Garrett's claim of ineffective assistance of appellate counsel.

3. Did the post-conviction court err in rejecting Garrett's claim of ineffective assistance of post-conviction counsel.

We affirm.

The facts, as set forth by this Court in Garrett's direct appeal, are as follows:

> In 2007, after a year-long surveillance operation of a residence on North Pershing Avenue in Marion County, the Indianapolis Metropolitan Police Department (IMPD) suspected that the residence was used as a facility for the manufacture of cocaine. IMPD observed Garrett, along with several other individuals, frequent the residence approximately eight to ten times over the course of the surveillance. While conducting surveillance on July 24, 2007, Detective Jake Hart observed Garrett and two others park near the residence and carry a large duffle bag full of rifles.
>
> On August 14, 2007, officers with IMPD's narcotic[s] division executed a 'no-knock' search warrant on the residence. SWAT team members Detective Garry Riggs, Sergeant Robert Stradling, and Officer Baker breached the residence through the front door using a battering ram. During this time, police officers loudly announced, '[P]olice, search warrant. Everybody get down on the ground!'
>
> Upon entering the house, Detective Riggs and Sergeant Stradling noticed Garrett repeatedly popping out of the second bedroom, approximately ten to twelve feet away from them. Garrett again and again pointed a semi-automatic handgun at Detective Riggs and Sergeant Stradling. Each time, he attempted to fire the handgun, but it misfired. A second SWAT team entered the residence from the rear and secured Garrett in the second bedroom. Three other individuals were also in the house and arrested during the execution of the search warrant.
>
> The police then searched the residence for evidence. In the kitchen, police recovered cocaine, digital scales, over $8,000, and

an assault rifle. In the second bedroom, where police apprehended Garrett, they found a silver and black Smith & Wesson .40 caliber semi-automatic handgun within arm's length of Garrett. No other suspects were in the second bedroom. In the living room, police recovered an additional assault rifle, two handguns, and a magazine for the handgun found near Garrett. The weapons in the living room were within ten feet of where Garrett had stood in the second bedroom.

*Garrett v. State*, No. 49A05-1101-CR-2, slip op. at 1-2 (Ind. Ct. App. Aug. 31, 2011) (internal citations to the record omitted), *trans. denied*.

[3] On August 15, 2007, the State charged Garrett under Cause Number 49G20-0708-FA-167078 (FA-167078) with: conspiracy to commit dealing in cocaine, a Class A felony; dealing in cocaine, a Class A felony; possession of cocaine, a Class C felony; possession of a firearm by a serious violent felon (possession of a firearm by a SVF), a Class B felony; and pointing a firearm, a Class D felony. On January 22, 2009, the State moved to dismiss the charges, and the trial court granted the motion.

[4] On August 25, 2009, the State charged Garrett under Cause Number 49G20-0908-FA-74802 (FA-74802) with: Count I, conspiracy to commit dealing in cocaine, a class A felony; Count II, dealing in cocaine, a class A felony; Count III, possession of cocaine, a class C felony; Count IV, possession of a firearm by a SVF, a class B felony; Count V, pointing a firearm, a class D felony; and Count VI, possession of cocaine and a firearm, a class C felony. On November 3 and 4, 2010, a two-day jury trial was held on Counts I, II, III, V, and VI. The jury found Garrett guilty on Counts, I, V, and VI. The jury convicted Garrett

on a lesser included offense on Count III and acquitted him on Count II. Garrett waived his right to a jury trial on Count IV, possession of a firearm by a SVF and, on November 24, 2010, the trial court found Garrett guilty.

[5] On appeal, Garrett argued that his convictions for possession of a firearm by a serious violent felon and pointing a firearm violated Indiana's constitutional prohibition of double jeopardy. A panel of the Court affirmed the trial court's judgment. *Id.* at 3.

[6] On May 10, 2012, Garrett, pro se, filed a petition for post-conviction relief. Following a hearing at which Garrett was represented by counsel, the trial court denied the petition. Garrett appeals the denial of that petition on grounds that he received ineffective assistance of counsel at every stage of the proceedings against him.

[7] Post-conviction proceedings are civil proceedings in which the petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Hollowell v. State*, 19 N.E.3d 263 (Ind. 2014). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 269 (quoting *Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail on appeal from the denial of a post-conviction petition, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the post-conviction court. *Hollowell*, 19 N.E.3d 263. The post-conviction court

is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State,* 888 N.E.2d 319 (Ind. Ct. App. 2008), *trans. denied.* We accept the post-conviction court's findings of fact unless they are clearly erroneous, but no deference is given to the court's conclusions of law. *Hollowell*, 19 N.E.3d 263.

# 1.

[8] We begin with Garrett's claim that he received ineffective assistance of trial counsel. When evaluating such a claim, we apply the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Hollowell v. State*, 19 N.E.3d 263. To establish the first element, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 269 (citing *Strickland*, 466 U.S. at 687). To establish the second element, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. 668).

[9] Garrett cites two instances that he claims warrant reversal of his convictions on this basis. First, he contends trial counsel rendered ineffective assistance in

failing to move to suppress evidence obtained as a result of an allegedly illegal search. Second, he claims that trial counsel rendered deficient, prejudicial performance in "failing to file a proper motion to dismiss and/or discharge for the violation of criminal rule [4(B)] and [4(C)]." Appellant's Br. p. 4. Both claims of deficient trial counsel performance involve counsel's failure to file motions on Garrett's behalf – a motion to suppress evidence and a motion for discharge under Indiana Criminal Rule 4. "To prevail on an ineffective assistance of counsel claim based upon counsel's failure to file motions on a defendant's behalf, the defendant must demonstrate that such motions would have been successful." *Wales v. State,* 768 N.E.2d 513, 523 (Ind. Ct. App. 2002), *trans. denied.*

[10] We turn to Garrett's claim that his trial counsel should have moved to suppress all evidence that was found at the Pershing Avenue house during execution of the search warrant. Garrett contends the probable cause affidavit that the police filed in support of their request for a search warrant failed to comply with the requirements of Indiana Code Annotated section 35-33-5-2 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation). In particular, Garrett argues that the affiant "lacked a <u>Substantial Basis</u> for concluding that Probable Cause existed and that contraband or evidence of a crime would be found at [the named address] or upon the petitioner's person." Appellant's Br. p. 13 (emphasis in original). Garrett

further contends that the search warrant was flawed because it did not name Garrett as a person to be searched.[1]

[11] Beginning with the first contention, when deciding whether to issue a search warrant, the issuing magistrate must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Cartwright v. State*, 26 N.E.3d 663, 668 (Ind. Ct. App. 2015), *trans. denied*. Our duty upon review is to determine whether the magistrate had a substantial basis for concluding that probable cause existed. *Id.* Although we review the trial court's substantial-basis determination de novo, we afford significant deference to the magistrate's determination. *Id.* In doing so, we consider only the evidence presented to the issuing magistrate and do not consider additional justifications or facts presented after the search. *Id.*

[12] The affidavit for probable cause, which was completed by FBI Special Agent Robert Brouwer, was not included in the trial record. Nor did Special Agent Brouwer testify at Garrett's trial. In short, there is nothing in the trial record reflecting the showing that was made in order to obtain the warrant. During the post-conviction hearing, Garrett did not introduce the probable cause affidavit into evidence. The post-conviction court took judicial notice of its file,

---

[1] Garrett also argues that he has standing to challenge the search of the home, but we need not address this argument because the State does not dispute Garrett's standing.

but the affidavit had not been placed in the file. Garrett's trial attorney, Travis Fox, was asked at the post-conviction hearing whether he considered the possibility of filing a motion to suppress alleging lack of probable cause, and he responded as follows:

> Well, my recollection – I don't think I did. I think that I summarily bypassed the suppression issue. My recollection of the facts of this case, our defense was based upon Mr. Garrett not having an interest in that property that he was merely a visitor. So, had I believe [sic] it was a search warrant being executed on the property, I don't remember the basis for the search warrant, but I typically give the search warrant a read over and see if there is [sic] any issues relating to it. I'm guessing that I did that in Mr. Garrett's case also. And then with him – without [sic] defense being that he was only at that property for a temporary status the combination of all that quite quickly leads me to the conclusion that there is no merit to a Motion to Suppress.

PCR Tr. pp. 17-18. This testimony does not shed light on the evidence that was presented to the reviewing magistrate for issuance of a search warrant.

[13] We reiterate that Garrett bore the burden of establishing his claim by a preponderance of the evidence. P-C.R. 1(5); *Hollowell v. State*, 19 N.E.3d 263. He has failed to meet this burden because as he has not provided any evidence pertaining to whether the magistrate who issued the warrant had a substantial basis for concluding there was probable cause to believe a fair probability existed that contraband or evidence of a crime would be found at the North

Pershing Avenue residence.[2] His claim of ineffective assistance in this regard fails.

[14] Garrett's other challenge to the search of the Pershing Avenue house is that he claims the search warrant should have identified him by name as a person to be searched. Indiana Code section 35-33-5-2 does not require that a warrant targeting a particular premises must identify persons who may be searched in that premises based upon developments ensuing from the execution of the warrant. The warrant in question identified the house in detail, as well as the items to be sought. When officers entered the home to search the premises, Garrett was armed with a handgun and attempted to shoot the officers, but fortunately the gun was inoperable. Officers were able to subdue him before he could successfully discharge the weapon and searched him in the course of arresting him. The warrant was not flawed in this respect. *See Foster v. State*, 633 N.E.2d 337 (Ind. Ct. App. 1994) (search of defendant was valid, even though the search warrant did not authorize search of particular person or mention the defendant, where police had warrant authorizing search of particular premises for particular items and conducted the search accordingly), *trans. denied*. The post-conviction court properly determined that trial counsel did not render ineffective assistance on this point.

---

[2] Garrett has included a copy of the probable cause affidavit in his Appellant's Appendix. We may not consider it because he concedes that it was not presented to the post-conviction court.

Next, Garrett contends his trial attorneys in FA-167078 and FA-74802 rendered ineffective assistance by failing to file motions to dismiss the charges pursuant to Indiana Rule of Criminal Procedure 4, subsections (B) and (C).[3] That rule provides, in relevant part:

> (B)(1) Defendant in Jail – Motion for Early Trial. If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule.
>
> * * * *
>
> (C) Defendant Discharged. No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the

---

[3] Garrett also argues in passing that his trial attorneys should have claimed that the State violated his right to a speedy trial under the Sixth Amendment to the United States Constitution and article 1, section 12 of the Indiana Constitution. He does not present any argument in support of his constitutional claims, so they are waived. *See Bigler v. State*, 732 N.E.2d 191 (Ind. 2000) (claim waived for appellate review because appellant failed to present cogent argument), *trans. denied*.

prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule.

*Id.*

[16] The broad goal of Criminal Rule 4 is to provide functionality to a criminal defendant's constitutionally protected right to a speedy trial. *Austin v. State*, 997 N.E.2d 1027 (Ind. 2013). It places an affirmative duty on the State to bring the defendant to trial, but at the same time it is not intended to be a mechanism for providing defendants a technical means to escape prosecution. *Id.*

[17] Garrett argues that his trial attorney in FA-167078 should have moved to dismiss with prejudice the charges against him because the deadlines set forth in Rule 4(B) and (C) were exceeded. Turning to the issue of Rule 4(B), a chronological case summary entry for April 4, 2008, states that the parties appeared for a pretrial hearing, and "Defendant's speedy trial request is still active." Appellant's App. pp. 10-11. That is the first reference to a speedy trial request. On April 30, 2008, Garrett "wavies [sic] his speedy request and then re-asserts it." *Id.* at 12. A fair reading of that entry indicates that the seventy-day deadline was reset and began to run once again. The trial court reset the trial for July 2, 2008, sixty-three days from the date of that hearing.

[18] On July 3, 2008, the court held another pretrial hearing. That hearing was not included in the trial transcript. The chronological case summary indicates that the State requested a continuance, and Garrett objected. The court granted the

continuance over Garrett's objection, scheduling a trial for September 22, 2008. If the court issued an order reflecting the new date, it was not included in the trial record.

[19] On September 17, 2008, the court held yet another pre-trial conference. That hearing was not included in the transcript. During the hearing, the court vacated the trial date and rescheduled it for September 29, 2008, although the defendant again objected. On September 18, Garrett filed a motion for continuance. The court granted the motion and indicated that it would reset the trial date at an upcoming hearing. If the court issued an order reflecting the new date, it was not included in the trial record.

[20] The court held additional pretrial hearings on September 24 and 25, 2008. The hearings were not included in the transcript. According to a chronological case summary entry, the issues the court addressed included "Crim Rule 4." *Id.* at 22. The court, by the agreement of the parties, released Garrett on his own recognizance, and Garrett remained free until the State dismissed the case.

[21] The record reflects that Garrett objected to two continuances, both of which resulted in rescheduling the trial beyond the seventy-day deadline. Rule 4(B) permits extensions of the trial date, even over the defendant's objection, in cases of court congestion or if the State is in the process of obtaining evidence that is currently not in its possession. *See Cook v. State*, 810 N.E.2d 1064, 1065 (Ind.

2004) ("The rule places an affirmative duty on the State to bring a defendant to trial within one year of being charged or arrested, but allows for extensions of that time for various reasons."). The record does not indicate why the trial court reset the trial date over Garrett's objections or why he was released on his own recognizance. During the post-conviction hearing, one of Garrett's trial attorneys stated that prior to trial, he had reviewed the chronological case summary for Lower Cause Number FA-167078 and had concluded "there wasn't a CR4 issue for Mr. Garrett." PCR Tr. p. 12.

[22] In this post-conviction proceeding, Garrett, as the petitioner, bore the burden of providing the evidence necessary to establish ineffective assistance, that is, that the trial court failed to assert a valid reason for overruling his objections to rescheduling the trial, resulting in scheduling the trial beyond the seventy-day deadline. For purposes of Garrett's Rule 4(B) claim as it pertains to Lower Cause Number FA-167078, the record is inadequate to allow us to determine whether the continuances were justified, and thus whether a motion for discharge and dismissal would have been warranted. Garrett has failed to provide sufficient evidence, and we cannot review the merits of this claim.

[23] Turning to Garrett's 4(C) claim under Lower Cause Number FA-167078, the record provided by Garrett has the same shortcomings. We are unable to determine the reasons for the trial court's continuances over Garrett's objections, and we cannot ascertain whether the continuances were valid. If the

continuances met the requirements of Rule 4(C), then they do not count against the Rule 4(C) deadline.

[24] In any event, we further note Garrett was originally charged on August 15, 2007, and the one-year deadline would have expired on or before August 15, 2008. On April 30, 2008, Garrett "wavies [sic] his speedy request and then re-asserts it." Appellant's App. p. 12. He thus agreed to waive the time that had elapsed to that point and to reset the deadline. The State was obligated to try him on or before April 30, 2009. The State dismissed the charges on January 22, 2009, well before that deadline. Thus, despite the gaps in the evidence provided by Garrett, it appears that the one-year deadline set forth under Appellate Rule 4(C) was not exceeded. If any of Garrett's trial counsels had moved for discharge or dismissal under Rule 4(C) as to FA-167078, the motion would have been denied. Counsel cannot have rendered ineffective assistance by failing to file a motion that would have been denied.

[25] In summary, the post-conviction court did not err in rejecting Garrett's claim of ineffective assistance of trial counsel for failure to claim that the State had violated Criminal Rule 4(B) and (C) in Cause Number FA-167078.

[26] Next, under FA-74802, the State refiled the charges on August 22, 2009. Garrett was not arrested and jailed until November 13, 2009. He had several different attorneys in FA-74802, and he claims two of them rendered ineffective

assistance by failing to file motions to discharge and dismiss pursuant to Criminal Rule 4(B) and 4(C).

[27] We turn to Garrett's arguments under Rule 4(B). He claims his first attorney in FA-74802, Marla Thomas, should had filed a motion to dismiss "immediately" upon filing her appearance on November 30, 2009, due to the delays in FA-167078. Appellant's Br. p. 8. We have already determined that Garrett has failed to provide a sufficient record to address his Rule 4(B) claim as to FA-167078. It follows that we also cannot address whether Attorney Thomas should have moved for discharge under Rule 4(B).

[28] Next, Garrett claims that a subsequent attorney in FA-74802, Travis Fox, should have filed a motion for discharge and dismissal upon filing his appearance on June 9, 2010. Garrett cites delays in FA-167078 as justifying the motion, but he has provided an insufficient record for us to determine whether a Rule 4(B) motion for discharge and dismissal would have succeeded as to events in that case.

[29] Garrett also claims that Attorney Fox should have filed a motion for discharge upon filing his appearance because delays in FA-74802 violated Rule 4(B). We disagree, because Garrett did not request a speedy trial through counsel until

April 13, 2010.[4] Attorney Fox appeared in the case on June 9, 2010, and only fifty-seven days had elapsed in the seventy-day period. A motion for discharge pursuant to Rule 4(B) would not have been successful at that time. Attorney Fox did not perform deficiently by failing to file a motion that would have been denied.

[30] Turning to Criminal Rule 4(C), Garrett again asserts that Attorneys Thomas and Fox should have filed motions for discharge and dismissal in FA-74802 along with their appearances. Rule 4(C)'s one-year deadline was tolled by the State's dismissal of charges in FA-167078 until Garrett was rearrested on November 13, 2009. *See Stinson v. State*, 797 N.E.2d 352 (Ind. Ct. App. 2003). The State concedes, and Garrett does not disagree, that 138 days that counted against Rule 4(C)'s one-year deadline carried over to FA-74802 from FA-167078.

[31] Attorney Thomas entered her appearance on November 30, 2010, twenty-seven days after Garrett was arrested. The twenty-seven days are not attributable to Garrett and, when added to the 138 days that carried over from FA-167078, results in a total of 165 days, which was well-short of the one-year deadline set

---

[4] Garrett tendered pro se motions for speedy trial in March 2010, but the trial court rejected them because Garrett was represented by counsel. The court was not obligated to consider the motions. *See Underwood v. State*, 722 N.E.2d 828 (Ind. 2000) (a party speaks to the court through counsel).

forth in Rule 4(C). Attorney Thomas could not have succeeded on a motion for discharge if she had filed one with her appearance, so she did not render deficient performance by declining to file that motion.

[32] As for Attorney Fox, he entered his appearance on June 9, 2010. At that point, 208 days had elapsed since Garrett was arrested on November 13, 2009. Assuming without deciding that none of the 208 days were attributable to Garrett, if that number is added to the 138 days that carried over from FA-167078, the total number of days that counted against the 365-day deadline was 346, still short of the deadline. Thus, if Attorney Fox had filed a motion for discharge and dismissal contemporaneously with his appearance, the motion would have been denied. Attorney Fox did not render deficient performance on this point.

[33] Garrett does not offer any other arguments under Criminal Rule 4(B) and (C), nor does he demonstrate prejudice resulting from deficient performance. *See Heyward v. State*, 769 N.E.2d 215 (Ind. Ct. App. 2002) (petitioner failed to demonstrate prejudice arising from attorney's failure to object to Rule 4(C) violation because, if he had timely objected, the trial court would have rescheduled the date, so petitioner failed to demonstrate the outcome would have been different). The post-conviction court did not err in rejecting Garrett's claim of ineffective assistance of trial counsel for failure to claim that the State had violated Criminal Rule 4(B) and (C) in FA-74802.

[34] We affirm the post-conviction court's rejection of Garrett's claims of ineffective assistance of trial counsel.

# 2.

[35] We next consider Garrett's claim that he received ineffective assistance of appellate counsel. As was the case with his claims pertaining to trial counsel, in order to prevail on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate both that counsel's performance was deficient and that the petitioner was prejudiced thereby. *Kubsch v. State*, 934 N.E.2d 1138 (Ind. 2010) (citing *Strickland*, 466 U.S. 668). Counsel's performance is deficient if it falls below an objective standard of reasonableness and "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id.* at 1147 (quoting *Strickland*, 466 U.S. at 687)).

[36] To establish the requisite prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Smith v. State,* 765 N.E.2d 578, 585 (Ind. 2002). The two elements of *Strickland* are separate and independent inquiries. The failure to satisfy either component will cause an ineffective assistance of counsel claim to fail. *Taylor v. State,* 840 N.E.2d 324

(Ind. 2006). Thus, if it is easier to dispose of such a claim on the ground of lack of sufficient prejudice, that course should be followed. *Landis v. State,* 749 N.E.2d 1130 (Ind. 2001).

[37] Garrett argues that his counsel on direct appeal rendered ineffective assistance because she failed to raise the Criminal Rule 4 issues discussed above. We have already determined that Garrett's claims of ineffective assistance of trial counsel in relation to Criminal Rule 4 are without merit, and as a result any claim on direct appeal that the trial court had violated Criminal Rule 4 would have failed. Appellate counsel did not render ineffective assistance on this point by failing to raise the issue.

[38] Garrett next argues that his appellate counsel should have challenged the sufficiency of the evidence for his conviction of conspiracy to commit dealing in cocaine. He asserts that there is no evidence from which the jury could have determined that he knew there was cocaine in the house or that there was an ongoing cocaine manufacturing enterprise.

[39] When reviewing a claim of insufficient evidence, an appellate court considers only the probative evidence and reasonable inferences supporting the verdict. *Kirk v. State*, 974 N.E.2d 1059 (Ind. Ct. App. 2012), *trans. denied*. We do not assess the credibility of witnesses or reweigh evidence. *Id.*

[40] In order to obtain a conviction for conspiracy to commit dealing in cocaine as charged, the State was required to prove beyond a reasonable doubt that Garrett (1) acting with the intent to commit dealing in cocaine, (2) agreed with his co-

conspirators (3) to knowingly possess with intent to deliver or possessed with intent to manufacture (4) cocaine in a an amount greater than three grams. Ind. Code Ann. § 35-41-5-2 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation); Ind. Code Ann. § 35-48-4-1 (West, Westlaw 2006).[5]

[41] The evidence presented at trial demonstrated that the police engaged in extensive surveillance of the Pershing Avenue house for almost a year before applying for a search warrant. The house was owned by the father of Willie Stott, one of Garrett's companions. Surveillance was often difficult because lookouts were stationed at nearby houses and would shout warnings when they saw the police. Despite these challenges, officers saw Stott, Courtney Long, James Sublett, and Garrett together at the Pershing Avenue house between eight and ten times. Officers also saw Long, Sublett, and Garrett visit the house separately twice a month each.

[42] On July 24, 2007, an officer saw Long, Sublett, and Garrett traveling together in a car that was registered to Stott. The officer followed them to the Pershing Avenue house, where he saw the three men get out of the car and enter the

---

[5] The version of the governing statute, i.e., Ind. Code Ann. § 35-48-4-1 (West, Westlaw 2006), in effect at the time this offense was committed classified it as a class A felony. This statute has since been revised and in its current form reclassifies this as a Level 4 felony. *See* I.C. § 35-48-4-1 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation effective through June 28, 2015). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed prior to that date, it retains the former classification.

house together.  The officers saw the men carrying a duffle bag with rifle muzzles sticking out.

[43]  From July 24 through August 14, 2007, an officer saw Long, Sublett, and Garrett travel in Stott's car to the house.  The house was very small.  It had surveillance cameras on the front and back, a configuration that one of the officers testified is sometimes used by individuals who deal in cocaine.

[44]  When the officers executed the search warrant at the house, Stott, Long, Sublett and Garrett were present.  A team of officers used a battering ram to open the front door.  It took four to six strikes to force the door open because it was being propped up by a piece of wood inside of the house.  The officers loudly identified themselves as police officers as they entered.  Once they were inside, they secured three of the men, but Garrett popped out of a doorway three to four times, ten to fifteen feet from the officers.  He pointed a handgun at the officers and moved his hand in a manner consistent with attempting to fire the gun.  The gun did not fire because, although there was a round in the gun's chamber, the magazine had been removed from the gun, rendering it inoperable.  Another team of officers entered the house through the back door and secured Garrett in a bedroom.  All four men were wearing latex gloves, which an officer testified is a practice consistent with persons involved in manufacturing crack cocaine.

[45]     Meanwhile, the first team of officers found an assault rifle and two handguns in the front room. Later, another assault rifle was found in the kitchen, and a handgun was found in the room where Garrett had been subdued.

[46]     The house was not being used in a manner that was consistent with a residence. There was relatively little furniture and very few decorations. Only one of the bedrooms contained a bed, which lacked sheets, and there were very few clothes in either bedroom. Firearms and bullets were scattered throughout the common areas of the house. The assault rifles contained magazines and were ready to fire.

[47]     In the kitchen, officers found few dishes. They opened one cabinet and found two digital scales that had cocaine residue, next to a box of baking soda. A detective testified that scales are commonly used to measure narcotics into smaller amounts, and baking soda is used to mix with powder cocaine to make crack cocaine. On top of the cabinet, they found blue porcelain bowls that contained 61.93 grams of cocaine, an amount that an officer explained is more consistent with dealing in cocaine rather than merely using it. The officers also found stacks of twenty dollar bills on top of another cabinet, $8,000 in total. The police characterized the house as a "stash house," where a small group of narcotics dealers process drugs for sale. Trial Tr. p. 409.

[48]     Meanwhile, officers had placed the four men in an enclosed front porch area that had previously been searched for contraband and deemed secure. Officers found two small baggies of cocaine near the four men during the process of

searching the house. In addition, the officers searched Garrett before he was taken to jail, and they found a third baggie of cocaine on his person. The officers did not find any items in the house or on Garrett's person that could be used to consume cocaine.

[49] This evidence is more than sufficient for a jury to conclude beyond a reasonable doubt that Garrett agreed to join with Stott, Long, and Sublett to deal in cocaine in an amount greater than three grams and was well aware of the cocaine manufacturing operation at the Pershing Avenue house. The house was not a residence but was instead the hub of an illegal narcotics venture that would have been obvious to a frequent visitor. Garrett and his companions visited the house on many occasions, including once when they delivered rifles.

[50] When the police executed the search warrant, Garrett attempted to shoot the officers, who loudly identified themselves as police. Garrett and his companions were all wearing latex gloves when they were apprehended, which is consistent with persons manufacturing cocaine for sale, and several of them had smaller baggies of cocaine on their person. Firearms and bullets were scattered around the house. Garrett's claim that he did not know about the 61.93 grams of cocaine that was concealed in the kitchen is a request to reweigh the evidence, which our standard of review forbids. *See Massey v. State*, 816 N.E.2d 979 (Ind. Ct. App. 2004) (evidence sufficient to support conviction for dealing in cocaine where State proved circumstances that established defendant's knowledge of the presence of contraband). If his appellate attorney had challenged the sufficiency of the evidence supporting the conviction, that

claim would have failed. Counsel did not render deficient performance by failing to present a futile claim, and the post-conviction court did not err in ruling against Garrett on this issue.

# 3.

Finally, we address Garrett's claim that he received ineffective assistance of post-conviction counsel. Neither the Sixth Amendment of the United States Constitution nor article 1, section 13 of the Indiana Constitution guarantee a right to counsel in post-conviction proceedings. *Graves v. State*, 823 N.E.2d 1193 (Ind. 2005). Post-conviction proceedings are not criminal actions and are not conducted under the standards applicable to such actions. *Id.* Consequently, when a petitioner raises a claim of ineffective assistance of post-conviction counsel, we consider whether "counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court." *Id.* at 1196.

In this case, Garrett's post-conviction counsel appeared at the post-conviction hearing and submitted evidence in the form of witness testimony, the trial transcript, and the chronological case summaries from FA-167078 and FA-74802. Counsel thus met the standard set forth in *Graves*. Garrett argues that post-conviction counsel should have amended his petition for post-conviction relief to add other claims, submitted additional evidence at the hearing, and submitted proposed findings of facts and conclusions thereon. Such actions are not required under the standard set forth in *Graves*. *See Matheney v. State*, 834

N.E.2d 658 (Ind. 2005) (post-conviction counsel's choice to present some claims and not others did not amount to ineffective assistance).

[53] For the reasons stated above, we affirm the judgment of the trial court.

[54] Judgment affirmed.

Baker, J., and Najam, J., concur.